## STATE v. WELDON.

1. CRIMINAL LAW—EVIDENCE—WRITTEN PAPER.—Where a written note, purporting to have been written by A to B, proposing a robbery of a stated store, was picked up in such store the morning after its robbery, and A was afterwards heard in jail to upbraid B for not coming at the time he (A) had told him (B) to come in the note that he (A) had written to B, and B denied all knowledge of the matter, and there was no other testimony that connected either A or B with this note, the note was properly admitted as against A, but it was incompetent evidence as against B.

2. IBID.—IBID.—OTHER OFFENCES.—Where A was discharged after admitting a robbery of the prosecutor's store, and then declared that he intended to make his support without working for it, his admission of that robbery was properly received as evidence on his trial for a subsequent robbery of this same store soon thereafter.

3. IBID.—IBID.—DEAF MUTES.—Where a deaf mute is offered as a witness, there is no error in receiving his testimony through sworn interpreters, who say that they can readily understand, and make themselves understood by, this mute, even though they are not generally experts in conversation with deaf mutes.

Before HUDSON, J., Sumter, March, 1893.

This was a prosecution of Wash Weldon and Henry Prescott for housebreaking and larceny, charged to have been committed on the 20th December, 1892. The opinion states the case.

*Messrs. T. B. Fraser* and *H. L. B. Weels,* for appellants.

*Mr. Wilson,* Solicitor, contra.

May 22, 1893.   The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER.   In this case the defendants were indicted and tried jointly for housebreaking and larceny, alleged to have been committed on the 20th December, 1892, by breaking open the window of the prosecutor's store and stealing therefrom sundry articles mentioned in the indictment of a value exceeding twenty dollars.   The jury having found both defendants guilty, they appeal upon the following grounds: "1. Because his honor erred in admitting the note purporting to have been written by Wash Weldon to Henry Prescott, without any proof that it had been written by Wash Weldon, or received by Henry Prescott.   2. Because his honor erred in admitting testimony of a separate and distinct offence, said to have been committed by the defendant, Wash Weldon, some time before the offence charged in the indictment.   3. Because his honor erred in admitting the testimony of an uninstructed deaf mute without expert testimony as to his competency."

As to the first ground of appeal, the facts, as gathered from the "Case," appear to be as follows: On the morning after the store had been broken into, the prosecutor, D. A. Outlaw, picked up from the floor of the store a piece of paper, purporting to be a note written by the defendant Weldon to his co-defendant Prescott, dated on the 20th December, 1892 (the day on which the testimony showed the store to have been robbed), in which the former proposed to the latter to join him in robbing the store.   When this note was first offered in evidence, the Circuit Judge declined to receive it, suggesting to the solicitor that he had better offer some evidence of the handwriting, but saying that he would not then make any ruling

upon the point, but would wait until further testimony was
adduced.     Subsequently, a fellow-prisoner with defendants
testified that he heard a conversation in the jail between the
two defendants, in which Weldon said to Prescott, "that if he
had come when he got that note, that they could have gotten
away with the goods before being caught; then answered Mr.
Henry Prescott, that he did not have anything to do with the
goods."    The witness further stated that the note referred to
"was a note that Wash Weldon said that he wrote to Henry
Prescott for him to come and assist him carry off some goods."
After this, and other testimony not relating to the note in ques-
tion, had been adduced, the solicitor again offered the note in
.evidence, saying that he could not prove the handwriting, and
upon objection the court ruled as follows: "I will allow 'it to
be read.   I will allow it read as a circumstance.   It will be
read as a paper found in the store the morning after the rob-
bery."    The note was then read, of which the following is a
literal copy, preserving the misspelling and want of any punc-
tuation marks:

"Mister henry prescut

"I dos want u to meett me att old Outlaw store hee is gone
to belo Sumter ann we wold have itt oll our wa henry Span
will go into wid uss I woul had u wid uss befour but I dint no
u wuod like lt now u meet mee dar shour and we will had it all
rite dount lett no body see dis. I will be dar sure Wash Weldon.

"too mister henry prescut.    December 20 1892."

While we think there was enough in the testimony to justify
.the admission of the note as evidence against the defendant
Weldon, who was shown by the testimony to have written such
a note as that offered in evidence, we are unable to discover any
testimony which in any way connects the defendant Prescott
with the note.   On the contrary, he seems to have denied any
connection with the matter when he was upbraided by the
other defendant in the conversation in jail.   It seems to us
that it would be a dangerous doctrine to hold that simply be-
cause a note purporting to be addressed to a third person was
picked up in a store on the morning after such store was rob-
bed, it would constitute even a circumstance tending to show

that the person to whom the note purported to be addressed was implicated in the robbery; for such a doctrine would put it in the power of a malignant person to implicate the most innocent individual in a crime.   It seems to us, therefore, that while the note was properly received as evidence against Weldon, it was incompetent evidence as against Prescott, in the absence of any testimony tending to connect him with the note.   For this reason we think the defendant Prescott is entitled to a new trial.

Coming, then, to the second ground of appeal, it appears from the "Case" that the prosecutor when on the stand testified that, owing to the fact that his store had been previously broken into, he had taken special precautions to fasten up his store securely, as he supposed, on the day before the robbery was committed for which these defendants were indicted; but he then said nothing as to who had committed the previous robberies.   Subsequently, however, he was permitted to testify, against the objection of counsel for the defendants, that the defendant Weldon admitted to the prosecutor that he had previously robbed the store, while he was in the employment of the prosecutor, for which he was discharged. While it is quite true that the general rule is that where a person is on trial for one offence, it is not competent to receive evidence tending to show that he had previously committed other offences, even of the same character, yet there are exceptions to this rule; and where the evidence tends to show that the series of offences are so connected together as practically to constitute a continuous transaction, then it is competent to receive evidence of such continuous offences.   See Wharton Crim. Evid., sections 31 *et seq.; Regina* v. *Cobden,* 3 Fost. & Finl., 835; *Regina* v. *Rearden,* 4 *Id.,* 76.   See, also, *State* v. *Robinson,* 35 S. C., 340.   Now in view of the fact that Weldon had been discharged from the service of the prosecutor, Outlaw, on account of these previous robberies, and especially in view of the fact that he had declared "that he did not intend to work, and that if he did not make his support out of old Outlaw he would make it out of somebody else," we are not prepared to

say that the evidence objected to was incompetent as against Weldon.

The third ground of appeal cannot be sustained. In Whart. Crim. Ev., sec. 375, it is said: "Deaf and dumb persons were formerly regarded as idiots, and, therefore, incompetent to testify; but the modern doctrine is, that if they are of sufficient understanding, and know the nature of an oath, they may give evidence, either by signs, or through an interpreter, or in writing. A deaf mute may be permitted to express himself in writing, if this be the mode in which he can be better understood, or through a sworn interpreter by whom his signs can be interpreted. Such interpretation is not hearsay, nor is it excluded by the fact that the witness can write." See, also, 5 Am. & Eng. Enc. Law, 121, where the rule is thus stated: "Deaf and dumb persons may be witnesses if any person can be found who can interpret their signs to the court and jury upon oath, or if they can write and read writing, so that the questions and answers may be conveyed in writing." These authors seem to be well sustained by the cases which they cite. See especially *Ruston's Case,* 1 Leach Cr. Cas., 408, where a deaf mute was examined as a witness in a case of larceny, through his sister as interpreter, who had acquired the facility of communicating with the witness by signs. None of the cases, so far as we have examined, require what is called expert testimony, but all of them recognize the doctrine that any person who is able to communicate with the deaf mute by signs may be sworn as an interpreter. In this case, two witnesses were sworn as interpreters, one the prosecutor and the other a disinterested third person, both of whom testified that they, at different times, had had the deaf mute in their employment, that he was very intelligent, and that they had but little difficulty in communicating with him by signs. It seems to us clear, therefore, that there was no error in receiving the testimony of the deaf mute through the medium of an interpreter.

The judgment of this court is, that the judgment of the Circuit Court as against the defendant, Wash. Weldon, be affirmed, but as against the defendant, Henry Prescott, that it be re-

versed, and that the case be remanded to the Circuit Court for a new trial so far as said Henry Prescott is concerned.