State v. Routzahn.

---

STATE OF NEBRASKA V. OLIN M. ROUTZAHN ET AL.

FILED MARCH 19, 1908.    No. 15,079.

1. **Criminal Law: ACCOMPLICE.** The keeper of a house of prostitution who enters into a corrupt criminal agreement with a public officer to pay, and does pay, to him certain sums of money at stipulated times, as a consideration for the privilege of carrying

on her unlawful business and selling liquor without a license, is an accomplice in crime within the meaning of the law, and on the trial of the officer for that offense it is not error to so instruct the jury.

2. ———: EVIDENCE. On the trial of such officer charged with having entered into a conspiracy to obtain money from a keeper of a house of prostitution as a consideration for allowing her to carry on her unlawful occupation, and with having for several months received from her the sum of $50 each month for that purpose, proof of payments of other sums of money to the defendant at or about the same dates, under like agreements by other persons engaged in the same unlawful occupation, may be received for the purpose of corroborating the principal witness upon the material facts of the transaction as alleged in the information.

ERROR to the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *State's exceptions sustained in part.*

*F. M. Tyrrell* and *C. E. Matson,* for plaintiff in error.

*A. S. Tibbets* and *Stewart & Munger,* contra.

BARNES, C. J.

Olin M. Routzahn and William A. Bentley were tried in the district court for Lancaster county on an information describing them as the chief of police and the city detective (officers of the city of Lincoln, respectively), and charging them with the crime of blackmail by forming a conspiracy to levy and collect certain sums of money from one Dolly Palmer, the keeper of a house of prostitution in that city, by means of threats of prosecution, coupled with an agreement for protection from arrests, the privilege of conducting her unlawful business, and selling beer to frequenters of her said house. It was also alleged in the information that the said conspiracy, and the agreement in pursuance thereof, was carried out by securing, collecting and obtaining from the prosecutrix the sum of $50 a month from and including the month of September, 1904, to and including the month of April, 1905. The trial resulted in an acquittal, and the state has

State v. Routzahn.

brought the case here under the provisions of section 515 of the criminal code to settle certain questions of law arising upon the trial which were decided adversely to the views of the prosecuting attorney.

1. The state's first contention is that the district court erred in instructing the jury as follows: "While it is a rule of law that a person accused of crime may be convicted upon the testimony of an accomplice or accomplices, still a jury should always act upon such testimony with great care and caution, and subject it to careful examination, in the light of the other evidence in the case, and the jury ought not to convict upon such testimony alone, unless after a careful examination of such testimony they are satisfied beyond a reasonable doubt of its truth, and that they can safely rely upon it. The jury are instructed that in this case Dolly Palmer would be an accomplice in the commission of the crime she alleges to have occurred." The prosecution maintains that in cases of blackmail and extortion the victim is not an accomplice, therefore Dolly Palmer was not an accomplice of the defendants in the transactions complained of. In order to determine this question, we must resort to the evidence introduced by the state to establish the charge contained in the information. Without quoting the evidence in full, it is sufficient to say that the prosecuting witness testified in substance: "That in the month of September, 1904, and a few days before the fair, they (meaning the defendants) came down and asked me if I would be willing to pay them $50 to have the privilege of running an open house and selling beer during the fair. I said, 'Yes, sir.' I did not pay them any money till the week following after the state fair. The conversation took place in my room, and there was nobody present but Mr. Routzahn and Mr. Bentley and myself. They both talked it over with me. I told them, if the rest of the landladies were willing to pay, why I would be willing. They gave me the impression that the rest of the landladies were willing to pay the same as I did. I didn't pay them the $50 then, at

that time, because they told me I would not have to pay until after the fair. Well, after the fair they came down together, and they took my money. I paid the money, but I cannot recall the conversation. The amount I paid was $50, and I paid it to Mr. Routzahn, and Mr. Bentley was present at the time. On the first of the next month they came down. I saw them in my room. Mr. Routzahn and Mr. Bentley and myself were the only persons present. I knew what they came for, and I paid them $50." It appears that this sort of proceeding occurred on the first of each month until the defendants went out of office, which was about the first of May, 1905. It is doubtful if the evidence of the state was sufficient to establish the charge of blackmail or extortion, a point which is not decided; but it would seem clear that this evidence, if true, was sufficient to convict the defendants of the crime of bribery. If the prosecuting witness was to be believed, then the defendants solicited from her the payment of certain sums of money for an agreement on their part to refrain from performing their plain duty in the premises, which was by all lawful means to prevent her from running a house of prostitution and illegally selling beer. That they were willing to accept and receive a money consideration therefor, and that she was willing to pay and did pay them $50 on or about the first of each month for the time set forth in the information, seems clear. This, without doubt, constituted bribery on her part and the acceptance of a bribe by the defendant officers, and would make the prosecuting witness an accomplice in the crime, which her evidence tended to prove. Therefore the instruction complained of was proper, and the state's first exception is overruled.

2. It appears that on the trial the state offered to prove, by keepers of some four or five other houses of prostitution, that the defendants made agreements with each of them similar to the one testified to by the prosecuting witness, and received payments of like sums of money from them for the same purposes. A part of the

evidence thus offered was received; but no evidence of the
payment of money to the defendants by persons other
than the prosecutrix was allowed to go to the jury. The
state excepted, and now contends that the court erred in
excluding the evidence of such payments, while the de-
fendants contend that this proof was properly rejected
because it was evidence of other crimes independent of,
and not at all connected with, the one for which they were
being tried. While the general rule is that on the trial
of one charged with a criminal offense proof of his com-
mission of other crimes is not admissible, yet to this rule
there are certain well-known exceptions; and the question
now is:  Does the proof offered fall within such excep-
tions?  In *Cowan v. State*, 22 Neb. 519, *Berghoff v. State*,
25 Neb. 213, and *Morgan v. State*, 56 Neb. 696, evidence
of the commission of like crimes by the defendants was
held admissible for the purpose of showing guilty knowl-
edge.  In *State v. Sparks*, 79 Neb. 504, and in *Clark v.
State*, 79 Neb. 473, which were cases where the defendants'
guilt of the crime charged depended upon the intent, pur-
pose or design with which the alleged criminal acts were
done, evidence of the commission of other like crimes by
the defendants at about the same time was held admissible
for the purpose of showing guilty knowledge and intent.
In *Guthrie v. State*, 16 Neb. 667, this question came before
us the first time.  In that case Roger C. Guthrie, the city
marshal of the city of Omaha, was convicted on a charge
of having received money from Charles Branch and other
gamblers of that city, as a consideration for allowing them
to carry on their business, and refraining from prosecu-
ting them.  It was urged that it was error for the trial
court to permit the introduction of evidence tending to
show the payment to the defendant of other sums of money
at other times and by other persons than Branch.  It was
said in the opinion:  "It (evidence of other payments by
other gamblers at other times) was properly admitted as
part of the transaction in which the $300 was paid by
Branch to plaintiff in error.  The fact of the carrying out

of this system was proper evidence for the purpose of corroborating the testimony of Branch, and showing the purpose, understanding and intent with which the money was received as alleged in the indictment, and for the purpose of showing the system under which these several transactions were had." In *State v. Ames*, 90 Minn. 183, the defendant (who was the mayor of the city of Minneapolis), was charged under the criminal statutes of Minnesota with levying blackmail or tribute from the women of the town. It appeared that one Cohen represented the mayor in collecting the various sums from the various women. The state was permitted to prove over the objection and exception of the defendant payments of money to Cohen by the other women referred to, and to relate conversations had with him in reference thereto. It was held that the evidence was admissible, and the court in discussing the question said: "But, reduced to its narrowest compass, the true rule is that evidence of the commission of other crimes is admissible when it tends corroboratively or directly to establish the defendant's guilt of the crime charged in the indictment on trial, or some essential ingredient of such offense, * * * or is a part of a common scheme or plan embracing two or more crimes so related to each other that the proof of one tends to establish the other." Commenting on the evidence the court further said: "It established beyond question a scheme concocted by the defendant to put the abandoned women of Minneapolis under tribute to him in return for his official protection, and each and every payment was a part of the one scheme. It was practically one transaction—each act, each payment, an essential part of the whole plan of corruption—and the evidence was competent.".

In the case at bar the defendants, two public officers, whose duty it was to enforce the law, were charged with conspiring together and adopting a general plan or scheme of holding up the prosecuting witness, a supposed violator of the law, and obtaining from her by blackmail, or, as the testimony tended to show, by bribery, certain sums of

money as the price of her immunity from punishment, and that they actually entered upon and carried out that plan. In such cases the defendants of necessity operate secretly and privately. There is usually but one other witness to each transaction, and that is the victim, the supposed criminal from whom the money is extorted, or upon whom the blackmail is practiced, and who, in case of bribery, as above stated, is an accomplice. In pursuance of his general scheme, the defendant goes from one to another of the same class of supposed wrongdoers, and by the same threats, agreements and promises of immunity obtains money from them as a consideration for allowing them to violate the law. This appears to have been the plan adopted by the defendants in this case; and this was done not only once, but for a considerable time at regular intervals. It follows that the proof offered would be corroborative of the testimony of the prosecuting witness, and for that purpose it was admissible.

We are therefore of opinion that the evidence offered falls within the exception to the general rule above stated, that the district court erred in excluding it, and the state's second exception is sustained.

JUDGMENT ACCORDINGLY.