# MARCH, 1918

### J. WOOL v. THE STATE.

#### No. 4546. Decided March 6, 1918.

1.—Receiving Stolen Property—Evidence—Other Offenses—System—Intent.

Where, upon trial of receiving stolen property, the evidence was of a circumstantial nature, although defendant was found in possession of some of the stolen goods but claimed that he purchased them, there was no error in admitting evidence of other similar burglaries at which property was stolen to show system and guilty intent on part of defendant, it being shown that some of the goods stolen at the other burglaries found their way into the possession of defendant. And to show this state of facts the confession of the thief, even in the absence of the defendant, which led to the discovery of the goods is admissible. However, the statement of the thief, after the conspiracy had ended, which tended to connect the defendant with the receipt of said goods was inadmissible and hearsay. Following Kaufman v. State, 70 Texas Crim. Rep., 438, and other cases. Prendergast, Judge dissenting.

2.—Same—Evidence—Declarations of Co-conspirator.

Where, upon trial of receiving stolen property, defendant's co-defendant turned State's evidence and was permitted to testify for the State, statements of said co-defendant made some time after his relation with defendant had ceased, to the effect that defendant was connected with receiving property in certain burglaries, was inadmissible. Prendergast, Judge, dissenting.

Appeal from the District Court of Wichita. Tried below before the Hon. Wm. N. Bonner.

Appeal from a conviction of receiving stolen property; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Martin & O'Neal,* for appellant.—On question of other offenses: Denton v. State, 60 S. W. Rep., 670; Johnson v. State, 60 id., 667; Grant v. State, 58 id., 1026; Buck v. State, 83 id., 390; Saldevar v. State, 55 Texas Crim. Rep., 177, 115 S. W. Rep., 584; Gardner v. State, 55 Texas Crim. Rep., 400, 177 S. W. Rep., 148; Haney v. State, 57 Texas Crim. Rep., 158, 122 S. W. Rep., 34; Nunn v. State, 60 Texas Crim. Rep., 86, 131 S. W. Rep., 320.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, _Presiding Judge._—One count of the indictment charged appellant with theft of property from Viles, and the other with receiving stolen property from some party to the grand jurors unknown. These transactions are alleged to have been committed on the 25th of October, 1916. The conviction was for receiving stolen property.

The testimony for the State is to the effect that a small quantity of the goods claimed to have been taken out of Viles' store when burglarized was subsequently found in appellant's second-hand store in Wichita Falls. The goods were found in possession of appellant between the first and middle of January. Viles lost a great many goods, under his testimony, but very few were found in possession of appellant which Viles identified. There were a number of other burglaries committed in different localities of the State from about the 12th of July to the 25th of October, in Wise, Childress, Knox and Wichita Counties. There seems to be no claim that appellant had anything to do with any of these. The allegation is that he received stolen goods from some party to the grand jurors unknown. There were various objections to the testimony with reference to the other burglaries covering the specified time from the 12th of July to the 25th of October. The goods from some of the stores were not traced to appellant's possession; that is, he was never found in personal possession of those goods. The State undertook to show by Levine, who was found with most of the stolen goods long after his dissolution of partnership with appellant in another county, that he got said goods from appellant in November.' Some of these Levine had sold in Dallas, some in Fort Worth, and some he carried to Paris and other places. Levine claims at the dissolution of their partnership he purchased these goods and carried them away from Wichita Falls to Paris, in Lamar County, and thence to various places and sold them. If appellant knew the goods were stolen or had any connection with them in any way, it is by the testimony of Levine. Appellant claims to have bought the goods found in his possession and without the knowledge or notice of the theft. This was in direct conflict with the theory of the State, and having put it before the jury, it was necessary for the State to show this theory of purchase false. This might be done by positive or circumstantial evidence. If appellant bought the goods in good faith, there was no case against him. If he bought the goods with the knowledge of their theft, the purchase would be no defense. Fraud must exist at the time of receiving the goods. Many of the cases are found collated in Mr. Branch's Annotated Penal Code, pages 1365, 1366, 1367. Levine testified in behalf of the State that appellant purchased the goods. He states, among other things: "It was a long time ago that I first saw these goods in Wool's possession or in the store. I first saw them there after Viles' store was burglarized, about three or four months after that; yes, about four months after the store was burglarized. . . . About these goods, Wool told.

me that he bought a bankrupt stock, that a fellow, two fellows from Oklahoma, one he told me came about three weeks before; he asked me about buying a bankrupt stock; he could buy a bankrupt stock and sell it cheap; that fellow came over and asked him about three weeks before. . . . I do not know what month these goods first came to the store; it was a log time ago, two or three or six months, I don't know. . . . Yes, all of these goods here were brought to our store, while I was in partnership with Wool. Yes, Wool and I were both working together when these goods were brought into our store. I did not buy these goods, Wool bought them; two fellows came there before that and wanted to sell a bankrupt stock. I do not know who they were either, these fellows that come to sell the bankrupt stock; I did not ask their names. I do not know how long these goods were in our store there before Wool bought me out. But I think that this $2000 worth of goods here, that I got from Wool when he bought me out,—they had been in our store there about four months at the time that Wool bought me out. Wool bought me out some two months before Christmas. But these goods that I got from Wool, these goods here, had been in our store something like six months before Christmas. . . . As to how long it was before I left here that I saw this tall dressed up man, or before I sold out to Wool that I saw him, will say that I did not see him. I did not see any tall dressed up man. I saw one about three weeks before; he came to make arrangements; he wanted to sell some stock, and Wool said he was going to let it go, and then the man came back and Wool made a deal with him."

The purchase theory in good faith called for a charge, as well as an acquittal unless shown false. Stanfield v. State, 73 Texas Crim. Rep., 290; Grande v. State, 37 Texas Crim. Rep., 51; Branch's Ann. P. C., p. 1368. As a matter of course, there must be knowledge of the fact the goods were stolen at the time of the reception. Branch's Ann. P. C., p. 1367, for cases.

There is a bill of exceptions reserved to the testimony of the sheriff of Childress County as to statements of a party named McCall, whom he had arrested for the burglary of Galbraith's store in August, 1916. At the time of the first arrest he found some of the goods from Galbraith's store in McCall's possession. McCall was placed in jail in Wichita Falls and escaped. Later he was arrested in Nolan County. In December, 1916, while a prisoner at Sweetwater, McCall and the sheriff of Childress County had a conversation in which McCall made statements to the effect that he had committed various and sundry burglaries in divers places, and that "some Jews in Wichita Falls handled" the goods for him. Pursuant to McCall's statement the sheriff of Childress County and others found some of the indicated goods in possession of appellant in Wichita Falls. The conversation occurred on December 26th. This officer testified that in pursuance to McCall's statement, about January 6th he found some of the goods in appellant's store. It

seems the only goods found in appellant's store were taken from the stores of Viles and Galbraith. None of the goods, so far as the record discloses, as the writer recalls, taken from the other burglarized stores were in appellant's possession. Appellant was not present at the time the conversation occurred and knew nothing about it. Other evidence was admitted that McCall, in another county, committed a theft, and perhaps a burglary in connection with it, of 2500 skunk skins. It was not sought to connect appellant with this transaction so far as the writer can ascertain from the record. It was also testified, over objection, that McCall was the most notorious burglar and expert in that line of crookedness in that section of the country. Various and sundry objections were urged to this testimony, which should have been sustained. All the authorities, so far as the writer is aware, reject statements of this character. These cases will be found collated in Mr. Branch's Ann. P. C., p. 1366. In Richardson v. State, 75 S. W. Rep., 505, it was held that it was error to admit proof of the declarations of the thief made in the absence of the defendant to the effect that defendant had agreed to receive the property. The sheriff of Childress County testified that McCall stated to him that he had arranged with these Jews to receive stolen property. McCall was a third party, not included in this record or in any way connected with it by any allegation. The indictment alleged that the property was received from someone to the grand jurors unknown. This was hearsay evidence occurring between the sheriff of Childress County and McCall. If appellant received the goods from McCall, the indictment should have so alleged. The grand jury had full knowledge of that fact when the indictment was found February 23, 1917. This conversation occurred on December 26, 1916. Some of the goods, under the sheriff's testimony, from Galbraith and Viles' stores were found in appellant's possession about the 6th or 8th of January, 1917. The grand jury knew or could have known by any sort of diligence the same facts to which the sheriff of Childress County testified. If McCall had been the party in the indictment mentioned from whom appellant received the goods, his confession might be admissible, not against appellant, but against McCall. Again, it is the uniform rule that the name of the party from whom stolen goods are received should be stated in the pleading. If that is not possible, then the grand jurors may allege the name to be unknown. In State v. Perkins, 45 Texas, 10, Judge Moore, who delivered the opinion, uses this language: "The person from whom they were received must also be alleged in the indictment." Quite a number of these cases are collated by Mr. Branch's Ann. P. C., p. 1367. He thus states the rule: "If the evidence makes it apparent that the grand jury knew or could have ascertained by the use of reasonable diligence the name of the party from whom the property was received, a conviction will not be sustained if the allegation is that such person was unknown. McKay v. State, 49 Texas Crim. Rep., 118, 90 S. W. Rep., 653; Wil-

liams v. State, 69 Texas Crim. Rep., 163, 153 S. W. Rep., 1136." The same rule was laid down in Yantis v. State, 144 S. W. Rep., 847. It is sufficiently clear and plain that the grand jury had full knowledge of McCall's statement when the indictment was found. They doubtless indicted McCall for the burglaries indicated by him. Now if McCall had been included in the indictment as the party from whom appellant received the stolen goods, his confession could be used against him connecting him with the matter as the thief, but not against appellant. The authorities seem to settle this proposition. Tucker v. State, 23 Texas Crim. App., 512; Cooper v. State, 29 Texas Crim. App., 8; Goldstein v. State, 75 Texas Crim. Rep., 390, and Meek v. State, 71 Texas Crim. Rep., 433. In these cases the indictment alleged the name of the parties from whom the property was received, and having done so, the confession of the thief was admitted against him. A quotation from the Tucker case is as follows:

"Upon the trial the court permitted the State, over defendant's objection, to prove by one Thedford that he met Noon Tucker driving said yearling to deliver the same to Bachelor, to whom the same had been sold by defendant; that Thedford asked Noon Tucker 'if that (meaning said yearling) was one 'he had mavericked?' that said Tucker at first made an evasive answer to said question, but afterwards said it was one they had raised. This testimony was, we think, unquestionably competent as bearing upon the issue of the guilt of Noon Tucker of the theft of the yearling. It was essential for the State to prove that Noon Tucker had committed a theft of the yearling in order to establish the charge against the defendant contained in the second count of the indictment."

In the Mooney case, 76 Texas Crim. Rep., 539, the opinion states that the indictment having made certain allegations, it was necessary for the proof to meet the allegations. The quotation is as follows: "The indictment alleged appellant received said cattle 'from a person to the grand jurors unknown.' It was proper, if not necessary, that this should be proven." The State, as the writer understands this record, did not undertake to show that the property was received from a party to the grand jurors unknown, or use any diligence to ascertain the name. It is only where the same is not known and can not be ascertained by reasonable diligence that the allegation of an unknown owner or party is permitted. The testimony, therefore, from every viewpoint, of the sheriff as to statements of McCall was inadmissible. It did show, however, that the allegation of reception of the goods from an unknown party was not authorized   Cases already cited. Branch's Ann. P. C., p. 1367.

Objection was also urged to the testimony or the witness Chenault. Levine testified that he and appellant had been partners in a secondhand business, and without going into details with reference to those matters, he states that about two months before Christmas they dis-

solved partnership on not very friendly terms; that he took his goods and moved to Paris and went into business. Nearly all of the goods that were taken from these burglarized stores were found either in his possession or in places where he had disposed of them. A great quantity of these goods were found in pursuance of his statement at Fort Worth and Dallas and taken back to Wichita Falls, and were in court at the time of the trial of appellant. While in Paris, where he set up his store, he had conversations with Chenault. These conversations, acts and declarations were admitted through Chenault. Appellant was in Wichita Falls. These towns were some distance, practically one hundred miles, apart. We deem it unnecessary to state the conversations; they are voluminous and the bills lengthy. These matters were not admissible. They were declarations of Levine long after the conspiracy, if there was one, between him and appellant. The acts and declarations of a co-conspirator can not be introduced except as against himself after the termination of the conspiracy or the purpose involved in their agreement. This is so well settled we deem it unnecessary even to cite authorities. They were, furthermore, conversations, acts and declarations between third parties in the absence of defendant, and could not possibly be binding upon or used against him.

The writer is of the opinion that those extraneous burglaries were inadmissible against appellant, except those in which he had been in possession of the goods.

There is another matter that might be mentioned in connection with the purchase theory before closing this opinion. There was testimony by the State that appellant purchased these goods. The jury should have been instructed that he was entitled to the benefit of his purchase theory, and should have been instructed that if there was a reasonable doubt of this matter he should have had the benefit of that doubt in the charge. The jury should also have been instructed that where the State puts in exculpatory statements, the statement will be taken as true, and the State must prove same to be untrue. Unless the State proves same false, appellant would be entitled to an acquittal. The authorities will be found collated in Mr. Branch's Ann. P. C., pp. 1365 to 1367, inclusive.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE (dissenting).—I respectfully dissent. My dissenting opinion in the companion case, No. 4547, this day decided, is applicable herein.

MORROW, JUDGE.—Appellant was convicted of receiving property which had been stolen from W. W. Viles.

Viles was a merchant at Burkburnett, in Wichita County, and it was proved without dispute that his store was burglarized on the 25th

day of October, 1916, and that certain property was stolen from it and that some of the property was found in the possession of appellant. Appellant was a merchant at Wichita Falls. He had previously been in partnership with one Mike Levine. Levine was also charged with receiving stolen property and testified as a witness on behalf of the State, in substance stating that he and appellant had been partners in business and that appellant had bought the stolen goods, and that in the dissolution of the partnership a part of the stolen goods came into the possession of the witness Levine. The State having proved that Viles' goods were stolen, that some of them were in appellant's possession, and that he had bought them, was charged with the burden of proving that he received them with a guilty knowledge and intent. To make this proof it relied in part upon the evidence of an accomplice and in part upon circumstantial evidence. The latter consisted of the testimony of one Galbraith that he was a merchant in Kirkland, Childress County, and that on the 28th day of August, 1916, his store was burglarized and certain goods taken therefrom, a part of which was subsequently found in the possession of appellant. Similar testimony was given by Thomas, a witness, with reference to property stolen from his store at Alvord, in Wise County, on the 12th day of July, 1916; and with reference to a burglary of the store of one Collins at Ringgold on the same date, and the finding of some of his stolen property in appellant's possession. One Maloney gave evidence of a similar transaction concerning his store at Goree, Knox County, on August 18, 1916. He also testified that a part of his property was found in the possession of one McCall. On the locating of some of these stolen goods in appellant's possession he told the sheriff that he had bought them from Mike Levine. The sheriff testified that he had a conversation with a man by the name of McCall at Sweetwater about the 25th day of December, 1916, in which McCall confessed to some of the burglaries referred to and further told the sheriff that certain Jews in Wichita were handling his stolen property and gave the sheriff a description of the locality of the place of business of the Jews to whom he referred, from which description the sheriff identified, he says, the place of business of the appellant.

These circumstances suggest that McCall was engaged systematically in committing burglaries of merchants' stores and that the fruits of his crime systematically found their way into the possession of the appellant. Appellant's explanation of his possession was the purchase of the goods. The fact that appellant had in his possession a part of the property stolen from the store of Viles, explained by the statement that he purchased it, might be regarded as of little weight in showing a criminal intent. One might innocently purchase stolen goods in a given instance. If, however, it could be shown, either circumstantially or directly, that he purchased stolen goods a number of times, that they were all stolen in a similar manner by burglary, that

the goods were similar in their character, merchandise, that the bur·glaries were committed by one individual, and that the character of business that the appellant was doing was a convenient vehicle for the disposition of stolen property, there would be presented a state of facts from which the inference of guilty intent might be inferred with much greater certainty than from a single transaction. These facts, we think, come within the principle often recognized by the text-writers and the courts wherein a series of acts of a nature similar to the act involved in the crime charged on trial may be proved for the purpose of enabling the jury to determine the intent and knowledge with which the main act was done. This principle is a well established one. The difficulty presented in all instances is the determination of the question as to whether it is applicable to a given case. A discussion of it with reference to the possession of the stolen goods will be found in Mr. Wigmore's Work on Evidence, volume 1, page, 410 et seq., section 324. As said in Ruling Case Law, volume 8, page 203, "it is competent to show that a crime charged was a part of a common scheme or plan which included numerous offenses. The principle on which such evidence is received to show intent or state of mind is simply the principle which the human mind instinctively applies in ordinary affairs of life. If the question is whether a given act was accidental or intentional, the fact that the actor has at numerous times performed similar acts under circumstances forbidding the idea of accident is very strong proof that the act under investigation was also intentional." The text cites and in the notes are listed many cases. Thompson v. United States, 144 Fed. Rep., 14, 75 C. C. A., 172, 7 Ann. Cas., 62; Thomas v. United States, 156 Fed. Rep., 897, 84 C. C. A., 477, 17 L. R. A. (N. S.), 720; State v. Dobbins, 152 Ia., 632, 132 N. W. Rep., 805, 42 L. R. A. (N. S.), 735; Com. v. Snell, 189 Mass., 2, 75 N. E. Rep., 75, 3 L. R. A. (N. S.), 1019; State v. Hyde, 234 Mo., 200, 136 S. W. Rep., 316; Ann. Cas. 1912D, 191; State v. Routzahn, 81 Neb., 133, 115 N. W. Rep., 759, 129 A. S. R., 675; State v. Lapage, 57 N. H., 245, 24 Am. Rep., 69; People v. Molineux, 168 N. Y., 264, 61 N. E. Rep., 286, 62 L. R. A., 193; State v. Welden, 39 S. C., 317, 17 S. E. Rep., 688, 24 L. R. A., 126; Dawson v. State, 32 Texas Crim. Rep., 535, 25 S. W. Rep., 21, 40 A. S. R., 791; State v. Downer, 68 Wash., 672, 123 Pac. Rep., 1073, 43 L. R. A. (N. S.), 774; Notes: 44 Am. Rep., 300, 105 A. S. R., 983, 62 L. R. A., 218, 43 L. R. A. (N. S.), 670, 756, 780; 11 Eng. Rul. Cas., 241; Dietz v. State, 149 Wis., 462, 136 N. W. Rep., 166, Ann. Cas. 1913C, 732.

The principle has often·been applied in our own court as will be noted in cases listed in Kaufman v. State, 70 Texas Crim. Rep., 438; Gray v. State, 77 Texas Crim. Rep., 221.

I am, therefore, of the opinion that in the instances developed in the evidence in this case, where the proof shows that the stores of merchants were burglarized by McCall and the stolen goods were found

and identified in the possession of appellant, that the evidence is competent. I think the confession of McCall to the burglaries committed by him (waiving the defect in the indictment referred to by the presiding judge) was admissible against the appellant to show the theft of the articles which came into his possession. It is elementary in this offense that the State must prove: first, that the goods were stolen; second, that the accused came into possession of them knowing they were stolen. In making proof of the first element the confession of the thief is admissible. I do not think that the statement of McCall testified to by the sheriff, which tended to connect appellant with the receipt of the goods, was admissible. It should have been excluded as hearsay. McCall did not testify to it nor did he make confession or statement of it in appellant's presence or hearing, nor was it made, as shown by the record, under circumstances which admitted the statement of one co-conspirator or co-principal during the commission of the act or in furtherance of a common design. I regard that part of the statement of McCall proved by the sheriff as damaging hearsay testimony requiring a reversal of the case. After the dissolution of the partnership between Mike Levine and appellant, Mike Levine was found in possession of certain articles stolen from the store of Viles and from the other stores mentioned by them. At the time he was so found in possession of them some of them were in Dallas and some of them were in Paris, Texas, and other places remote from Wichita. The State was permitted to prove certain statements made by Levine in the absence of appellant and which tended to connect appellant with the crime. I think these statements made in appellant's absence by Levine at the time they were made, as shown by the evidence, were hearsay and should have been excluded. It is clear that at the time they were made appellant and Levine were not acting together; that their criminal design, if one existed, had been completed and their relationship had ceased. The admission of this evidence was, I think, reversible error.

For these reasons I concur in the reversal of the case.

*Reversed and remanded.*