ALBERT WOODELL V. THE STATE.

No. 9673.  Delivered January 27, 1926.

**1.—Receiving a Stolen Automobile—Charge of Court—Must Conform to Indictment.**

Where an indictment charged that an automobile, the property of M. G. Anderson, had been stolen by one Bruce, and that appellant fraudulently received it from Bruce, knowing it to have been stolen, the proof must sustain each of these elements of this offense, and the courts must also submit the issues, as alleged in the indictment, in his charge to the jury.

**2.—Same—Charge of Court—On Defensive Issues—Improperly Omitted.**

Where, on a charge for receiving a stolen automobile, the evidence of appellant raised the issue of a bona fide purchase by him from the alleged thief, without knowledge on his part that the automobile had been stolen, this issue should have been affirmatively submitted in the court's charge to the jury. For the error in submitting such charge, the judgment must be reversed and the cause remanded.

Appeal from the District Court of Stephens County.  Tried below before the Hon. C. O. Hamlin, Judge.

Appeal from a conviction for receiving a stolen automobile, penalty two years in the penitentiary.

The opinion states the case.

*V. L. Shurtleff* of Breckenridge, for appellant.

*Sam D. Stinson*, State's Attorney, and *Nat Gentry, Jr.*, Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for receiving a stolen automobile with the punishment fixed at two years in the penitentiary.

The count in the indictment under which appellant was convicted alleged that the automobile was the property of N. Y. Anderson and had been stolen by one Bruce and that appellant fraudulently received it from Bruce knowing it to have been stolen. The charge authorized the conviction of appellant if he received the automobile knowing it had been acquired by theft. The charge does not require the jury to find that appellant "fraudulently received it, nor that it belonged to Thompson, nor that it was received from Bruce." The objection to the charge upon this point was not sufficiently explicit to call the court's attention to the matter complained of. It is necessary that the proof follow the allegations in the indictment and that the jury find the material facts alleged therein to be true. We call attention to this in view of another trial.

Bruce was used as a witness by the state. He admitted having stolen the car and selling it to appellant. His testimony, if true, would show that appellant knew in advance that Bruce intended to steal a car for the purpose of selling it to appellant; that the latter had told Bruce the kind of car he wanted and they had practically agreed upon the price; that the car was delivered to appellant at night under circumstances putting him on notice that the car was stolen property; that appellant gave Bruce a check for $100 in part payment making the check payable to one Jackson, in order that Bruce might not be identified with the transaction. Bruce testified that this check was executed in "Bob's Cafe on West Walker Street, or in Tuttle's Confectionery, right beside Bob's Cafe." Bruce also testified that on Monday morning appellant paid him $10 more on the car and $40 on Monday night. Appellant was operating a filling station some distance from where he and his wife lived. Mrs. Woodell testified that he often remained at his place of business on Saturday night and would come home on Sunday morning; that they owned a Ford coupe and as they had sev-

eral children they needed a larger car and had discussed buying a Ford sedan; that appellant was not at home on Saturday night but came home on Sunday morning about seven or seven-thirty. From this point we quote her testimony:

"He came home with another man in the car and he told me there was a man out there that had a Ford sedan he wanted to sell to us and wanted me to go out and look at the car. I went out and looked at the car and told him it seemed to be all right. I afterwards learned it was Mr. Bruce with him. Mr. Bruce wanted $300.00 for the car and Mr. Woodell said he would give him $200.00 and then they discussed the price and about a bill of sale and tax receipts. They finally agreed on a price of $225.00. Then Mr. Woodell told him he did not want the car at all until he got the bill of sale and tax receipt. Mr. Bruce then said he could get a bill of sale from the man he had got the car from but would like to have the money then. Mr. Woodell then said he did not want to pay for the car until he got the bill of sale and tax receipts. They finally agreed that Bruce was to get bill of sale and receipts showing good title and Mr. Woodell was to then take the car and would then pay for it. Mr. Bruce said he could get the bill of sale that day, that Sunday, and that he did not want to go after the bill of sale until he knew the car was sold, he wanted to know the car was sold before he went to the trouble of getting the bill of sale. Mr. Woodell told him he would pay him $100.00 on the car if he would get the bill of sale. Mr. Woodell was to pay him the balance of the money. Mr. Bruce said he would leave the car there while he was gone and keep the check during the day. Mr. Woodell and I used the car that day to take the children to Sunday school. This sedan had no numbers on it and my husband took the numbers off of the coupe and put them on the sedan. We drove the car some during the day but when we returned that night Mr. Bruce had not returned, and he did not come that night. My husband and I were worried Sunday night when Mr. Bruce did not return and we talked about it until eleven o'clock and on Monday morning he still had not come and we decided that we would stop the check from being cashed. Monday morning he could not get the coupe started and as it was getting late, I called a service car and went down to the bank and cashed a check for $100.00, which Mr. Woodell had given me. I called a service car and went to the bank to cash that check. I think that left the amount in the bank too small to cash another $100.00 check. That was the purpose of me cashing the check. I forgot the

service car I called, but think I called Mr. Patterson. After I left Mr. Woodell got the coupe started and I met him just before I got home from the bank, with the children. That was within about two blocks from home and he come home right behind me. He was in the coupe then. That was Monday morning about nine fifteen. After that my husband went out to the filling station. The next time I saw Bruce was in the afternoon when he and Mr. Woodell came to my house in the coupe. The key to the sedan was in the house. Mr. Woodell asked me about the key and I got it for him and he gave it to Mr. Bruce and Bruce gave him the check back. Mr. Woodell told Bruce then he would still take the car if he would get him the bill of sale and tax receipts showing he had title to the car. When the check for $100.00 was given I got the check book and Mr. Bruce wrote the check and Mr. Woodell signed it. When he took the check Mr. Bruce was to return with the bill of sale that night or evening."

The cashier of the bank testified that Mrs. Woodell came into the bank early Monday morning soon after the bank opened and cashed a check for $100 which only left some $25 or $35 to appellant's credit, and a few minutes after Mrs. Woodell left the bank Bruce presented a check for $100 payment of which was refused on account of insufficient funds. The court failed to charge upon any defensive issue. This was called to his attention by exception. If appellant received the car from Bruce by purchase in good faith not knowing it to be stolen and gave the check for $100 as part payment, the balance to be paid when Bruce furnished the bill of sale and tax receipts he would not be guilty of the offense charged against him. See Grande v. State, 37 Tex. Crim. Rep. 51, 38 S. W. 613. Appellant did not testify. However, we can not escape the conclusion that the testimony of his wife pertinently raised this issue. She says they became worried because Bruce did not return with the bill of sale and tax receipts as he had promised and they decided to stop payment on the check; that her purpose in getting the $100.00 from the bank was to reduce the amount in the bank so that the Bruce check would not be cashed when presented. The evidence having raised the issue of purchase in good faith appellant was entitled to have the jury pass on it under an appropriate affirmative instruction. For the error in omitting such charge the judgment must be reversed and the cause remanded.

*Reversed and remanded.*