### A. B. (TUFFY) THAMES V. THE STATE.

No. 21157. Delivered June 26, 1940.
Rehearing Denied October 16, 1940.

The opinion states the case.

*Callaway & Callaway,* of Brownwood, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of receiving and concealing stolen property, and by the jury awarded a penalty of two years in the penitentiary.

F. G. Mills, a negro cook at the home of J. Tom Padgitt, in Coleman, Texas, testified that he found two diamond rings on a shelf in the home of Mr. Padgitt and took the same. That a day or so afterwards he went to appellant's home and offered to sell, and did sell, one of the rings, a small one with one diamond set, to appellant for $2.00 which ring was afterwards valued by an expert at four or five hundred dollars. That about two days thereafter Mills again approached appellant at his cafe, and sold him another diamong ring with two diamond stones for the sum of $4.00, and appellant told the witness to keep his mouth shut, the latter ring being valued by an expert at approximately fifteen hundred dollars. Mills further testified that at a later date appellant met him and asked him "Have the laws said anything to you?" and he said "No."

Mrs. J. Tom Padgitt, while on the witness stand, identified these two rings as her property, and said that she missed them on November 26, 1939, and that they were taken without her consent, and that the rings then shown to her, the one with the one diamond and the one with the two diamonds, were her rings.

It appears from the record that upon being apprehended Mills, the original taker, confessed to the theft, and told what he had done with the rings. The officers then approached appellant, and he, after studying awhile, admitted that he had the rings, and said it would take about thirty minutes to get them, and asked the officers not to go with him when he went to his home as their presence there might frighten his mother. Appellant soon returned and·said that he wanted to go to the county attorney's office, and he and the officers went there. While there and talking to the officers appellant said "this is pretty big stuff," and that he wanted some time to think it over; that he did not want to get anybody else in trouble, and wanted

to know if any charges had been filed against him. He was told there had not been any charges filed. The county attorney testified that appellant then said: "I have the rings, but I can't get them for awhile. I will plead guilty to a misdemeanor; this is pretty big stuff." There had been no complaint filed, and none was filed until two days thereafter.

We are of the opinion that the appellant was not under arrest at such time, the testimony establishing rather conclusively that he was not arrested until some two days thereafter, and that he went to the county attorney's office on his own volition, and was not in the custody of any officers, although in their company, at such time, nor under any restraint or constraint that would have caused him to think that he was under arrest at the time of the making of the above quoted statement. It is also here worthy of note that appellant did not testify nor offer any testimony of any kind, being content merely with a cross-examination of the State's witnesses. We think such statements admissible, and also that they went far to show knowledge upon appellant's part that a negro cook's acquisition of approximately $2000.00 worth of diamond rings could not have been otherwise than unlawful.

Appellant contends that the statement made to the county attorney by him ( appellant) was made while he was under arrest, and was inadmissible because of the fact that same was not in writing and made after a statutory warning. It is our impression that appellant was not under arrest at the time this conversation took place, and in support of our conclusion we quote the following testimony of the sheriff, Mr. Roby:

"Q. At the time you went down there and talked to him, you had already talked to the negro, F. G. Mills? A. Let's get it straight: You mean that I had talked to the negro first?

"Q. Yes. A. I had already talked to the negro.

"Q. You already had his statement as to what he had done with the rings? A. Yes, sir.

"Q. Then you went down and talked with Mr. Thames? A. Yes.

"Q. And it was your object and purpose, of course, at that time to arrest him for the offense? A. No, sir, I didn't arrest him then.

"Q. With reference to the time you went to his place and talked to him about the rings: how long was it before you arrested the defendant, or put him under control at all? A. I think it was about two days after that.

"Q. You did not arrest him at that time, or on that day? A. No. sir."

This disposes of bill of exceptions No. 3.

To the same effect is bill of exceptions No. 4, with the exception that such bill complains of the testimony of the county attorney to the same effect as that just above complained of from the sheriff, and our ruling thereon is the same.

Bill of exceptions No. 1 is based upon the admission in evidence of the first transaction between appellant and the negro Mills wherein appellant paid Mills $2.00 for the small diamond ring two or three days prior to the time he purchased the ring with the two large diamonds for $4.00.

These two rings were stolen by the same man at the same time, and the transactions of their sale to the appellant were had at approximately the same time. They were exhibited to the appellant at the same time, both said to be on the negro's hand and worn by him. They were both turned over to the officers by appellant at the same time, and evidently kept by appellant at the same place prior to turning them over to such officers. There was no denial that they were both held by appellant, and recognized by him as "big stuff," and his conversation with the officers related to both of such rings.

It is also to be noted that Mrs. J. Tom. Padgitt testified without objection to the following: "The two articles you show me are two diamond rings, one having two stones in it and one having one stone in it. Those were my rings on or about November 19th, 1939. The last time I saw those rings they were secretly put away at my home.

"At that time I had colored help in the person of a boy named F. G. Mills. I first missed those rings on November 26th, 1939.

"I did not give F. G. Mills, or anyone else, my consent to take those rings; I later recovered the rings after losing them. Those rings were stolen from me in Coleman, Coleman County, Texas."

We do not think error is evidenced in this bill.

Bill of exceptions No. 2 relates to the trial court's ruling in allowing the State, after it had rested its case, to reopen the same for the purpose of placing before the jury the testimony of the officers as to their communication with appellant, which action was objectionable to appellant's attorneys. This was a matter that lay within the discretion of the trial court, and we see no reason why such should not have been done. Evidently the State had overlooked this rather important testimony, and the jury was entitled to have the full facts legitimately presented before it.

Guilty knowledge upon the part of appellant that such rings had been acquired by theft at the time he received and concealed the same was a necessary element of this offense, and we find such a doctrine laid down by the trial court in his charge to the jury. That such knowledge must have been shown by other corroborating testimony than that of the negro boy Mills is also argued to us by appellant's attorneys. And after a careful review of the testimony, we are impressed with the fact that such testimony is here present. That a negro boy should be possessed of two diamond rings worth in the aggregate $2000.00, and was willing to sell the same for $6.00, might go far to show that this negro boy did not know the value of the same, and thought that they were mere worthless costume jewelry. But again, the fact that appellant purchased both these rings for such an inadequate price might have some bearing on the fact that he knew their value was greater than that of costume jewelry. Again the jury had a right to consider the statement of the negro boy when he said that appellant told him to keep his mouth shut, and also when he asked the negro if the "laws" had said anything to him; and again when it was shown that appellant told the officers that this was "big stuff."

The trial court in his charge laid down the law of the necessity of a corroboration of the testimony of an accomplice, and also the fact that guilty knowledge had to be shown upon the part of appellant. He also gave an approved charge on circumstantial evidence, and we are of the opinion that the circumstances were of sufficient cogency to base thereon a conclusion that appellant was bound to have known that such a valuable article as this diamond ring had been acquired by this negro boy by theft when appellant received the same.

Under the record presented to us we perceive no error, and the judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

Appellant insists in his motion for rehearing that we were in error in holding that it was not shown that he was under arrest at the time he made the declarations concerning his possession of the rings in question. Appellant's bills of exception relating to the matter were qualified. The qualifications, not having been excepted to, are binding upon this court. The bills, as qualified, are to the effect that the officers to whom appellant made the declarations in question testified that they had no intention of arresting appellant and that it was two days after

they had their conversation with him relative to the rings before he was arrested. It appears that appellant did not testify that he believed he was under arrest. We quote from Burton v. State, 277 S. W. 390, as follows: "Whatever be the intention of the officer, if he had not arrested accused and accused was not apprised of his intention to arrest him at the time the statements are made, they are admissible, if accused did not reasonably believe himself to be under arrest. It is not altogether the intention of the officer that governs the matter. Many cases are cited by Mr. Branch in his Ann. Tex. P. C. under section 62, which illustrate the principle just stated."

The following is taken from Section 62 of Branch's Ann. Texas P. C.: "Although the officer would not have permitted defendant to depart, yet if defendant did not reasonably believe himself to be under arrest, proof of his unwarned confession is admissible."

See, also, Hernandez v. State, 129 S. W. (2d) 301.

We are constrained to adhere to the conclusion expressed in the original opinion that the record fails to show that appellant was under arrest.

It might be plausibly argued that appellant's statements relative to the rings were res gestae. He was apparently still in possession of the rings and concealing them. We quote from Harris v. State, 10 S. W. (2d) 551, as follows: "He (Harris) was in possession of the stolen shoes. His statement was admissible as res gestae of his possession when his right was first challenged. The explanation of possession of property alleged to be recently stolen, made while the possession lasts, if made when the party is first directly or circumstantially called upon to explain, is a part of the res gestae of possession, and as such is admissible against the accused. Underhill's Criminal Evidence (3d Ed.) Section 471; Wharton's Criminal Evidence, Vol. 2, Section 761; Perry v. State, 41 Tex. 486; Taylor v. State, 15 Tex. App. 359; Seebold v. State, 89 Tex. Cr. R. 563, 232 S. W. 328. Res gestae is independent of, superior to, and cannot be restricted or limited by the rules relating to confessions or admissions made after arrest. Gowans v. State, 64 Tex. Cr. R. 401, 145 S. W. 614."

Appellant contends that the evidence is insufficient to show that he knew the rings were stolen. Appellant's declaration to the officers, when questioned about the rings, to the effect that "it was pretty big stuff and that he didn't want anybody else in trouble" indicated guilty knowledge. Again, according to the testimony, appellant inquired whether any charges had been

filed against him. Again, appellant went to the county attorney
and said to him: "I will plead guilty to a misdemeanor; this is
pretty big stuff." According to the testimony of F. G. Mills, the
confessed thief, when he sold appellant one of the rings appel-
lant told him to keep his mouth shut. Later, according to the
witness' testimony, appellant asked him, in effect, whether the
officers had said anything to him.

Looking to the testimony in its entirety, and taking into
consideration the value of the rings, as mentioned in the orig-
inal opinion, we would not feel warranted in holding that the
evidence touching appellant's knowledge that the rings were
stolen is insufficient.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has
been examined by the Judges of the Court of Criminal Appeals
and approved by the Court.