**Harvey FILLMORE, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–201–CR.**

Court of Appeals of Texas, Corpus Christi.

Aug. 26, 1982.

Rehearing Denied Feb. 3, 1983.

---

James Bates, Edinburg, for appellant.

Reynaldo Cantu, Jr., Criminal Dist. Atty., Brownsville, for appellee.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a conviction for theft. After trial by jury, the court assessed punishment at ten years in the Texas Department of Corrections. The sentence was probated. The sufficiency of the evidence is the challenge on appeal.

The appellant owned and operated a shop in Harlingen, Texas, known as the Valley Gold Exchange which bought and sold secondhand personal property. On March 19, 1981, the appellant purchased a gold bracelet and gold ring from an eighteen-year-old woman, Rosa Villela. Villela had previously stolen the jewelry from the home of Angelita Ramirez.

The evidence, viewed in the light most favorable to the jury verdict, shows that Gracie Rubio, an employee at the Valley Gold Exchange, was minding the appellant's shop when Villela came in to sell the stolen jewelry. Villela told Rubio that the jewelry belonged to her mother and that her mother wished to sell it. She explained that her father would not give her mother any money, so while her parents were down at the beach, she had come to sell the jewelry. Rubio examined the jewelry but had difficulty appraising the bracelet because it contained two different kinds of gold. Rubio then telephoned the appellant, the owner of the shop. The context of that conversation does not appear in the record, but after making the call, Rubio offered to purchase the bracelet for $747.00. There is nothing in the record to indicate in what manner Rubio and/or the appellant arrived at this figure, although there was testimony by Rubio that the normal procedure was to weigh the jewelry, determine the karat, and then pay a fixed price per unit of weight depending upon the price of gold at that

time. After paying Villela for the bracelet, Rubio offered to purchase the ring for approximately $70.00. She informed Villela, however, that the appellant was on his way to the shop and that if she would wait, he would possibly offer her a higher price. Villela remained at the shop for several hours. When appellant arrived, he bought both pieces of jewelry for $1,058.00. Rubio testified that Villela told appellant the same story that she had been told. The evidence shows that Villela was paid in cash, mostly small bills.

The record shows that appellant did not require Villela to show any identification. He did not keep any records of the transaction, nor did he record Villela's physical description, name or address, or a description of the property. He also failed to obtain a signed warranty from Villela that she had the right to possess the jewelry.

On March 25, 1981, Zeke Ramirez, the victim's son, was scouting the pawn shops in Harlingen in an attempt to locate his mother's stolen jewelry. At the Valley Gold Exchange, he described the stolen bracelet and ring to the store clerk, Gracie Rubio. She admitted that the items had gone through the store. Later, she explained that the appellant had purchased the jewelry that was being inquired about from a young woman the preceding week. The son telephoned his mother, who along with his father, Ramiro Ramirez, came to appellant's shop. The police were also contacted. When Mr. and Mrs. Ramirez arrived at the Valley Gold Exchange shop, they were likewise told by clerk Rubio that appellant had purchased the jewelry from a young woman. Shortly thereafter, the appellant entered his shop. He told substantially the same story. At some point during this discussion, Guy Anderson, the Chief of Police in Harlingen, entered the store and listened to the conversation between appellant and the Ramirezes.

Chief Anderson testified that he overheard the appellant tell the Ramirezes that he thought the jewelry was worth between four and five thousand dollars. Mr. Ramirez testified that he had purchased the bracelet for his wife in 1974 for $610.00, and the ring in 1978 for $631.00. He did not estimate the jewelry's value at the time it was stolen or at the time of trial.

■ On appeal, the issue is whether this evidence is sufficient to sustain the conviction under Sec. 31.03 of Tex.Penal Code Ann. It is axiomatic that the State has the burden to prove all of the elements of an offense. One of the elements of the offense of receiving stolen property (now consolidated with other theft offenses in Sec. 31.03 Tex.Penal Code Ann. [Vernon 1974]) is that the accused knew that the property was stolen when he received it. In fact, knowledge that the property is stolen is the gravamen of the offense of receiving stolen property. *Pool v. State*, 528 S.W.2d 255 (Tex.Cr.App.1975); *Pannel v. State*, 121 Tex.Cr.R. 515, 51 S.W.2d 398 (Tex.Cr.App. 1932); *Miller v. State*, 507 S.W.2d 203 (Tex. Cr.App.1974).

Appellant contends that the State failed to prove that he knew the jewelry was stolen when he purchased it.

■ It is well settled that knowledge that property was stolen may be implied from the circumstances surrounding the accused's acquisition of the property. *Ehrman v. State*, 580 S.W.2d 581 (Tex.Cr.App. 1979); *Walker v. State*, 539 S.W.2d 894 (Tex.Cr.App.1976).

In the instant case, a circumstance which authorized the jury to find the requisite knowledge was the appellant's failure to obtain certain record information. Sec. 31.-03(c)(3) Tex.Penal Code Ann. (Vernon Supp. 1982) provides:

"(3) an actor engaged in the business of buying and selling used or secondhand personal property, or lending money on the security of personal property deposited with him, *is presumed to know upon receipt by the actor of stolen property* (other than a motor vehicle subject to Article 6687–1, Vernon's Texas Civil Statutes) *that the property has been previously stolen from another if the actor pays for or loans against the property $25 or more* (or consideration of equivalent value) *and the actor knowingly or recklessly:*

(i) fails to record the name, address, and physical description of identification number of the seller or pledgor; (ii) fails to record a complete description of the property, including the serial number, if reasonably available, or other identifying characteristics; or (iii) fails to obtain a signed warranty from the seller or pledgor that the seller or pledgor has the right to possess the property. It is the express intent of this provision that the presumption arises unless the actor complies with each of the numbered requirements. (emphasis added)

■ Appellant admits that the uncontroverted testimony is that the appellant never maintained any of the records required by this provision of the Penal Code. Appellant contends, however, that the evidence establishes a theory of good faith purchase, which the State failed to refute, and which overcomes the presumption of knowledge. In this case, the testimony of Angelita Ramirez and Guy Anderson, both State's witnesses, and Gracie Rubio, a defense witness, shows that appellant explained how he had purchased the property from Rosa Villela and that Villela had lied to him about the property belonging to her mother.[1] Rosa Villela testified for the State and admitted on cross-examination that she had lied to both Rubio and the appellant.

■ This explanation is not one which rebuts the Sec. 31.03 presumption; and the issue of appellant's knowledge was properly presented to the jury for the factfinder to determine.

It was said by our Court of Criminal Appeals in *Callahan v. State*, 502 S.W.2d 3 (Tex.Cr.App.1973):

"It should be remembered that a jury is not bound to accept an appellant's explanation of his possession of recently stolen property. (citations omitted). However, when the explanation is made at the time when the appellant's possession of recently stolen property is first challenged or questioned either directly or circumstantially, the necessity of showing the explanation is false is greater. This is particularly true where such explanation is reasonable and is sufficient to rebut the circumstance of possession of property recently stolen.... Still further, the falsity of an explanation may be shown by circumstantial evidence and determined by the jury in the light of all of the facts."

We pause to recognize that in *Wool v. State*, 83 Tex.Cr.R. 113, 201 S.W. 1002 (Tex.Cr.App.1918), it was held that where one accused of receiving stolen goods sets up the defense that he bought the goods without knowledge or notice of the theft, the State has the burden of showing that the theory of purchase was false.

Now the legislature has authorized the conviction of persons engaged in the business of buying and selling secondhand property upon possession alone, when certain information set out in the Code is not obtained from the seller. Thus, evidence which would be insufficient to convict the occasional buyer since 1977 is, however, sufficient to convict the professional buyer.

■ We have reviewed the record, and at no point can we find that appellant attempted to comply with Sec. 31.03, which would be a factor in determining good faith. Nor can we find any explanation for the appellant's purchase of the jewelry for only $1,058, when, by his own admission, he believed the jewelry to be worth between four and five thousand dollars. This is a circumstance which the jury can consider in determining whether the appellant knew the property was stolen. Recent authorities hold that a very inadequate purchase price

1. Although appellant did not testify at trial, we note that the explanation made at the time the accused is first confronted is the explanation which controls, and not the explanation made at the time of trial. *Banks v. State*, 160 Tex.Cr.R. 418, 271 S.W.2d 661 (Tex.Cr.App.1954); *Bowers v. State*, 414 S.W.2d 929 (Tex.Cr.App. 1967). The explanation made at the time first confronted may be established through the testimony of those present at the time the explanation was made. *Woodell v. State*, 103 Tex. Cr.R. 86, 279 S.W. 840 (Tex.Cr.App.1926).

is a factor which points toward appellant's guilt. When one purchases property from a stranger at a price far below its apparent value, that factor is evidence that the accused had reason to believe the property was stolen. *Bradshaw v. State,* 482 S.W.2d 233 (Tex.Cr.App.1972). See *Bowers v. State,* 414 S.W.2d 929 (Tex.Cr.App.1967); *Thames v. State,* 143 S.W.2d 606 (Tex.Cr. App.1940); *Palermo v. State,* 128 Tex.Cr.R. 623, 82 S.W.2d 960 (Tex.Cr.App.1935). Under the circumstances, we do not feel the State had the burden of showing the purchase theory false.

The fact that appellant maintained no records is a circumstance which also points to his guilt. Regardless of whether the lack of records raises the presumption, the ordinary businessman maintains certain information relevant to the conduct of his business. Here, the appellant maintained no records whatsoever.

The evidence also indicates that Rose Villela apparently told appellant and Rubio that her name was "Letty" or "Leticia." Had appellant made even a cursory investigation into his young seller's identity, by asking for some identification, Villela's use of a pseudonym would have been apparent.

Mr. Ramirez testified that the appellant called him after he got out of jail and suggested that the whole matter could be fixed up without his involvement with the police.

It appears to us as well as it did to the jury that the appellant attempted to shield himself from available information and from his guilt. Under these circumstances, we do not give much credence to the appellant's claim of good faith possession.

We have no doubt that the legislature enacted 31.03(c)(3) in an attempt to deter commerce in stolen property. The presumption of knowledge under this statute is a strong one, but it has limited applicability and scope. It applies only to the professional dealers in second-hand property, and arises only when that professional fails to record certain required information.

As one commentator has aptly noted:

"The ordinary thief steals in order to sell the stolen property, not to use it. Yet he cannot, by himself, successfully deal with the ultimate consumer. He must operate through a middleman, the professional receiver of stolen property. Without such receivers, theft ceases to be profitable. It is obvious that the receiver must be a principal target of any society anxious to stamp out theft in its various forms." See LaFave and Scott, Criminal Law p. 682 (West 1972).

The burden to record certain information placed on the professional dealer in second-hand property is a reasonable one. The law need not tolerate the professional dealer's failure to comply with the statute, and thereby claim innocent or good faith possession.

The appellant's ground of error is overruled, and the judgment of the trial court is affirmed.