CLEVELAND *et al. vs.* CHAMBLISS, guardian.

[WARNER, Chief Justice, being engaged as presiding officer of the senate organized as a court of impeachment, did not sit in this case.]

1. Where there has been opportunity to raise a question as to the sufficiency of the notice of a motion for a new trial, and it has not been raised in the court below, nor ruled upon by the presiding judge, the question is not here for review.

2. A creditor of an insolvent estate who is under injunction not to sue the executor, has a good excuse for not obtaining judgment on his debt before proceeding by bill in equity to set aside a voluntary

conveyance made by the testator in his life-time; and if, during the pendency of the bill, a judgment or decree establishing the amount of the debt is obtained against the executor, the same may be brought into the bill by way of amendment, and may thus be used as effectively as if the adjudication had preceded the filing of the bill and had been alleged therein originally.

3. If one of several defendants to a bill brought by an executor to marshal assets, answers and turns his answer into a cross-bill against certain of his co-defendants, who are voluntary donees of property under the testator, (such cross-bill praying that the voluntary conveyances be set aside because void as to creditors,) one of the co-defendants to the executor's bill not made a party to the cross bill may, before decree on the cross-bill, file a separate and independent bill to accomplish the same object in his behalf which the cross-bill seeks to accomplish in behalf of the complainant therein, and the complainant in such independent bill will not be bound by the result of the litigation on the cross-bill, he being no party to the same though a party to the original bill with which the cross-bill is connected.

4. Where the bill attacks voluntary conveyances solely on the ground that the donor was insolvent, making no charge as to any actual fraudulent intent, such an intent apart from the alleged insolvency is not in question, and no instructions to the jury which do not look to insolvency as a necessary fact to be established are appropriate.

5. The amount of the donor's liabilities as compared with his resources at the time he executed the conveyances sought now to be set aside, being a vital point in the case, the allusion of the court to "bogus" debts or claims in charging the jury, with the use by the court of that epithet in connection with matter charged at the request of complainant's counsel, would seem objectionable; and a new trial having been granted below, the judgment granting it will not be reversed.

New trial. Practice in the Supreme Court. Equity. Administrators and executors. Judgments. Fraudulent conveyance. Charge of Court. Before Judge GRICE. Crawford County. At Chambers. July 11, 1878.

In February, 1875, Thomas E. Chambliss, as guardian of the minors of Israel J. Chambliss, deceased, filed his bill against Wilde C. Cleveland as executor of Washington C. Cleveland, deceased, and as trustee for Orleana A. and Oliver C. Cleveland, making, in brief, this case:

In 1858 complainant loaned to Washington C. Cleveland, principal, and E. T. Jordan, security, about $5,300.00, and to said Jordan, principal, and Cleveland, security, $2,000.00, taking their notes therefor. These notes were renewed in 1862. Suit was brought on that for $2,000.00 in Crawfoid superior court against Jordan alone. Cleveland having died, complainant was enjoined by the executor of his estate on a bill filed in September, 1869, to marshal assets, from commencing suit against such estate. Judgment was obtained against Jordan for $2,609.00 principal and interest. Shortly thereafter he was declared a bankrupt, and in 1874 was discharged, over the continued opposition of complainant. The master appointed on the bill to marshal assets reported over $12,000.00 in favor of complainant, and gave him preference over other creditors, except a few of equal dignity. The assets in the executor's hands, with the exception of property which he has not seen proper to appropriate to the payment of the debts of the estate, will not exceed $3,500.00. This other property, of the value of $9,000.00, ought to be made subject to the debts due complainant and other creditors of equal dignity. It consists of about eight or nine hundred acres of land, eight mules, farming utensils, etc., all of which, on or about November 20, 1868, was conveyed by testator in consideration of natural love and affection, to Wilde C. Cleveland in trust for testator's minor daughter and son, the said Orleana A. and Oliver C. At the time of this conveyance testator, Washington C. Cleveland, was indebted to complainant and others an amount equal to, if not greater than, the property he then owned. Prays that the aforesaid trust deed be declared void, the property subjected to complainant's claims, etc.

On June 5, 1877, complainant filed an amendment to his bill, setting forth that the conveyance in trust by testator for the use of his children, was as follows: One Johnson bought from one Letton five hundred and fifty acres of land of the value of $5,500.00. Johnson received a deed

and gave his notes for the purchase money with testator as security thereon. Johnson being unable to meet his notes, it was agreed between him and testator that the latter should pay them off, whilst Johnson should convey the land to Wilde C. Cleveland in trust for Oliver C. This was done on November 20, 1868. Testator also gave to his said son, Oliver C., by his will, farming utensils, stock, etc., of the value of $1,300.00, all of which went into the hands of his said trustee. In February, 1869, testator conveyed to Wilde C. in trust for his daughter, Orleana A., in consideration of natural love and affection, three hundred and fifty acres of land of the value of $3,500.00, and by will gave to her stock, farming utensils, etc., of the value of $1,000.00, and money and notes to the amount of $1,535.00, all of which passed into the hands of her trustee. Orleana subsequently married Lamar, who succeeded Wilde C. in the trust, and who complainant prays may be made a party defendant.

Complainant further alleged that the report of the master appointed on the bill filed by the executor to marshal the assets had, since the filing of his original bill, been confirmed by the verdict of a jury and decree, to-wit: at the September term, 1876, of Crawford superior court.

He also alleged that the value of the property which the executor improperly failed and refused to appropriate to the payment of debts of the estate, to-wit: that voluntarily conveyed to his children by testator, was $13,900.00.

Wilde C., the executor and trustee, answered that the indebtedness of testator at the time of the voluntary conveyances, did not exceed $9,000.00 on his own account, and $5,000.00 as security for others, whilst he had property to the amount of over $30,000.00, enumerating the items of which it consisted.

Lamar, trustee, answered, putting the value of the land conveyed to his wife at $1,200.00, the indebtedness of testator at the time of the conveyance at $14,000.00, and his property at $50,000.00. Denies that complainant holds any claim of $12,000.00 against testator, and alleges that if

testator ever owed him anything it was a debt contracted prior to June 1, 1865, and not having been sued before January 1, 1870, it was barred. In reference to the claim against Jordan, as principal, and testator, as security, he says it was contracted prior to June 1, 1865, and was not sued before January, 1, 1870, though Jordan was sued; that complainant released testator in his lifetime; that he has allowed Jordan to make way with property subject to the judgment, etc.

The evidence introduced upon the trial of the issues thus formed need not be reported except so far as to state that the record of the proceedings had on the bill to marshal assets filed by Wilde C. Cleveland, executor, shows that Mary Zeigler, as guardian *ad litem* for Octavia Zeigler, a defendant to such bill, answered the same and filed a cross-bill against the executor and trustee under the voluntary conveyances from testator, attacking the same upon substantially the same grounds as are presented in the bill of complainant, and alleging further that the money of the said Octavia paid for the land conveyed by Johnson to Wilde C., as trustee, under direction of testator, seeking to follow the fund, etc. Lamar, trustee, who was a party defendant to the bill to marshal assets, was also made a party to this cross-bill. Chambliss, guardian, the complainant, was not.

The precise date of the filing of this cross-bill does not appear, but service was acknowledged by opposing counsel on March 24, 1875.

The master reported adversely to this claim, and his finding was confirmed by verdict and decree at the September term, 1876.

The jury found for defendants. On January 19, 1878, counsel for complainant served counsel for defendants with the following notice :

"*To the defendants and their solicitors:*

"Whereas the judge of the superior court of the Macon circuit, Honorable Barnard Hill, presiding at the hearing of said cause when said verdict was rendered, suddenly died during said September term,

1877, on the day next to the rendition of said verdict, whilst complainant was preparing through his solicitors a motion for a new trial, and before the same was or could have been filed, and whereas the next March term of said superior court is and will be the first time when such a motion could be filed, the defendants are hereby notified that at said March term of the superior court of Crawford county, the complainant will make and file a motion for a new trial in said cause as an extraordinary case, and as authorized by law in such cases made and provided."

The grounds of the motion subsequently made at the time designated in the notice, were, in substance, as follows:

1. Because the verdict was contrary to law, evidence, and the principles of justice.

2. Because the court erred in refusing to charge the jury as follows:

(*a.*) "The law presumes that every man intends the necessary consequence of his act, and if the act necessarily delays, hinders, or defrauds his creditors, then the law presumes that it was done with a fraudulent intent.

(*b.*) "The law stamps a man's generosity with the name of fraud, and fraud arises and may exist without the imputation of moral turpitude, when the act prevents him from acting fairly towards his creditors.

(*c.*) "Fraud may be presumed when a gift is made by a debtor who is indebted so as to be embarrassed and approaching insolvency, and whereby a fall in prices or fluctuation in the value of what is retained would probably leave him unable to pay his creditors.

(*d.*) "Though a debtor may not be absolutely insolvent at the time of a gift, or may not be rendered absolutely insolvent by such gift, yet, if at the time of the gift he is so embarrassed by debts as to approach insolvency, so that a fall in prices or fluctuation in the value of what is retained by him would probably leave him unable to pay his debts, then fraud may be presumed and the gift set aside."

3. Because the court erred, after charging the following request: "On the question whether the debtor was insolvent or not at the time of the gift, or whether, under th

Cleveland *et al.* *vs.* Chambliss, guardian.

principles of law given you in charge, the presumption is that the gift was intended to delay or hinder creditors, the jury are to consider all debts proven whether they have since become enjoined or not, or barred or not, provided they existed at the time of the gift," in adding this qualification : " In considering whether they were debts or not at the time, you may take into consideration the conduct of the parties.   If I claim to have a debt against the estate of Cleveland in 1868 or 1869 and he died, and the executor called upon me to prove my debt and I did not do it, the jury would have the right to consider my conduct as to whether I had a debt or not, or whether it was not bogus, or whether there was some reason why it was not a debt— but if it was a debt at the time of making these deeds, then you can consider whether it has been collected or not."

Complainant and his counsel made affidavit that the case was heard and the verdict rendered about six o'clock P. M. on Wednesday the 26th of September, 1877, and that on the next ensuing day at about the hour of six P. M. the Hon. Barnard Hill, the judge presiding at said term, suddenly expired during the session of court, thus ending the term before a motion for new trial could be prepared, etc.; that this fact constitutes such extraordinary ground as would support a motion made at the next succeeding term.

The recitals in the grounds of the motion were verified by the affidavits of complainant, his counsel and the stenographic reporter.

Judge Grice, the successor of Judge Hill, certified that upon evidence satisfactory submitted to him and of file with the motion, the recitals in the grounds were true.

A consent order was taken for the hearing of the motion in vacation.   After argument, a new trial was ordered.

No exception seems to have been taken as to the notice of the motion or the verification of the recitals, etc.

To the judgment ordering a new trial, Oliver C. Cleveland, who had become of age and been made a party, and Lamar, trustee, defendants excepted.

HALL & SON; R. D. SMITH; BACON & RUTHERFORD; BLOUNT, SIMMONS & HARDEMAN, for plaintiffs in error.

J. S. PINCKARD; McCAY & TRIPPE, for defendant.

BLECKLEY, Justice.

1. A point was made in the argument which was not presented below, and upon which the judge there presiding did not rule. We were urged to reverse the judgment granting a new trial, because the notice given of the intended motion did not specify any ground or grounds upon which the motion would be based. To show that the notice must embrace the grounds, and not merely an admonition of the intention to move, we were cited to 21 *Ga.*, 216; 30 *Ib.*, 677; and Code, §3721, compared with Cobb's Dig., 503. Let it be granted that the notice was defective for want of fulness, there was opportunity below to urge the defect, but instead of using the opportunity, the plaintiffs in error suffered the motion to be made and disposed of on its merits, without any effort to defeat it on account of the character of the notice. The point appears here in its virgin state, wearing all its maiden blushes, and is therefore out of place.

2. The proposition that equity will not aid a creditor to pursue assets with which the debtor has parted, until after the debt has been established by judgment, was pressed upon us, and the following authorities were cited: 4 *Ga.*, 319; 3 *Ib.*, 449; 42 *Ib.*, 124; 47 *Ib.*, 530; 56 *Ib.*, 144. But the facts of the present case are special. Here the creditor filed his bill whilst under an injunction not to sue the executor of his debtor; and after the executor's bill on which the injunction was granted resulted in a decree fixing the amount of the debt, that decree was pleaded by way of amendment to the bill of the creditor, and thus when the latter bill came to a final hearing, the creditor was in a situation to prove his claim, as against the executor, by conclu-

sive evidence.   Add to this that the estate of the debtor
was certainly insolvent, and we can see no reason for holding
that the creditor ought to fail, on the theory that his bill
was prematurely brought.   We are not ruling upon a de-
murrer to the bill, but upon the sufficiency of the evidence
adduced at the hearing; and even if the bill, as amended,
had been demurred to, we see not why the injunction and
the insolvency would not have furnished a sufficient excuse
for not having a judgment to start with.   Under the Code,
§4181, the rendition of the decree in the executor's suit,
pending the creditor's bill, was proper matter for amend-
ment to the latter bill; and it seems to us that after being
thus brought in, it could be used as effectively as if an
adjudication of the debt had preceded the filing of the bill,
and had been alleged as a part of the original case.

3. There were numerous defendants to the bill brought
by the executor to marshal assets, among them the com-
plainant in the present bill, the volunteers or donees whose
title is now attacked, and one Mrs. Zeigler.   Mrs. Zeigler
engrafted upon her answer a cross-bill, which had for its
object the overthrow of the title of these donees, and the
bringing in of the property to pay the debts of the donor's
estate—at least the debt which was due to her.   The cross-
bill failed, the result being a finding and decree against it.
The plaintiffs in error urge that the result thus reached on
Mrs. Zeigler's cross-bill, is binding upon the complainant in
the present bill, and hence that the whole controversy is
closed, for which reason the verdict was correct and should
not have been set aside by the grant of a new trial.   But
the complainant in the present bill was not a party to the
cross-bill, and the present bill was filed, if not before the
cross-bill, certainly before the latter was heard and disposed
of.   Why did not the complainant in the independent bill
have the same right to attack the conveyances to the donees,
by that bill, as Mrs. Zeigler had to make a similar attack by
the cross-bill?   And why should the failure of her attack
bind him, if the failure of his attack, had his bill been tried

first, would not have bound her? His relation to the cross-bill was precisely the same as hers to the independent bill, with one exception—he was a party to the original bill out of which the cross-bill sprang. Is a defendant to an original bill affected by the result of litigation between two or more of his co-defendants, on a cross-bill to which he is not a party? Upon principle, he is not, and if there is any authority to the contrary it is unknown to us. The able and industrious counsel who argued this case for the plaintiffs in error, failed to produce any.

4. The various requests to instruct the jury on the subject of actual fraud, were not in line with the charges of the bill. The bill proceeds on the sole ground that the donor was insolvent, or became so by the reduction of his fortune involved in making the gifts. No actual fraudulent intent is alleged—indeed, the bill seems unusually careful not to impute any such intent. As the bill stands, insolvency is an indispensable fact to be established, before the complainant will be entitled to a decree, and the court was right in treating as irrelevant any request for instructions which would or might leave that question undecided. Adherence to the pleadings is a prime virtue in trying a cause.

5. The fifth head-note presents all we desire to say on the epithet " bogus," and on the general result of our deliberations.

Judgment affirmed.