[No. 25946.   Department Two.   April 20, 1936.]

THE STATE OF WASHINGTON, *Respondent*, v. JAKE
SALZMAN, *Appellant*.[1]

*Sam R. Sumner* and *Harvey F. Davis,* for appellant.

*Sam M. Driver* and *L. J. Gemmill,* for respondent.

BLAKE, J.—The defendant was, by an information
containing two counts, charged with the crime of
grand larceny, in that he bought and received the prop-
erty described in each count, knowing it to have been

[1]Reported in 56 P. (2d) 1005.

stolen. From judgment entered upon a verdict of guilty on both counts, defendant appeals.

Appellant makes six assignments of error, three of which challenge the sufficiency of the evidence to sustain the verdict. The other assignments are directed to the giving of an instruction and the refusal to give two instructions requested by appellant.

First: At the close of the state's case, appellant moved to dismiss on the ground of insufficiency of the evidence to sustain the charges. Again, at the close of all the evidence, he moved for a directed verdict. After verdict, he interposed a motion in arrest of judgment.

It conclusively appears from the evidence that the items of personal property described in the information—a pump and a five horse-power electric motor in the first count, and a twenty-five horse-power electric motor in the second—were stolen, and that appellant purchased them from the thief. So, the only question raised by the first three assignments of error is as to the sufficiency of the evidence to show guilty knowledge on the part of appellant when he purchased the property.

Appellant was a second-hand dealer, operating a store in Wenatchee known as the Portland Second Hand Store. Around the middle of April, 1935, one Stotler drove up in front of appellant's store in an automobile. In it he had the pump and five horse-power motor. He went into the store and asked for Salzman. (Neither knew the other.) Stotler asked appellant if he wanted to buy an electric motor. They went out to the car, and, after looking at it, appellant asked: "Did it come from anywhere near Wenatchee?" Stotler replied: "No, it came from up the river." Salzman made no other inquiry as to where the motor came from or how or from whom Stotler got it. Although

the motor and pump were worth $150, appellant offered Stotler five dollars for it, which the latter accepted. Salzman paid by check dated April 16, 1935. Stotler then asked appellant if he wanted to buy any more motors, and appellant said yes, if he (Stotler) could keep quiet about it.

A few days later, Stotler again appeared at the Portland Second Hand Store. This time he was accompanied by one Dow. They had two electric motors, one of which was that described in the second count of the information. Stotler had his car parked in front of the store. Appellant said to him: ''You had better drive around behind, and I will take a look at them.'' While they were discussing the price to be paid, appellant asked ''if those motors come from up the river too.'' Again no inquiries as to how or from whom Stotler and Dow got the motors. Although the twenty-five horse-power motor alone was worth $125, Salzman offered, and Stotler and Dow agreed to accept, twenty-five dollars for the two. The car was backed into the basement, and the motors unloaded. Salzman gave Dow a check for ten dollars, dated April 18, 1935. The check was made payable to J. Johnson. (Salzman and Dow were not acquainted with each other.)

Salzman made a report to the chief of police, as required by Rem. Rev. Stat., § 2483 [P. C. § 9026], of the pump and motor described in the first count of the information. He did not report the purchase of the twenty-five horse-power motor described in the second count. He also called the sheriff's office by telephone and asked the sheriff to come down and inspect a motor which he had just purchased. The sheriff went down to the store very shortly, and Salzman directed his attention to a three horse-power ''Century'' motor. This motor was not described in either count of the information. The sheriff, however, looking around on his

own account, ran across the twenty-five horse-power motor in the basement. He asked Salzman where he got it, and Salzman said a rancher, whose name he did not know, had left it there for sale.

■ Under this evidence, we think not only that the court was warranted in submitting the question of guilty knowledge to the jury, but that the jury was warranted in finding that element present as a matter of fact. Guilty knowledge is an element in these cases which can rarely be proven by direct and positive testimony. Ordinarily it must be found by inference from all the facts and circumstances surrounding the transaction. Under some authorities, the unexplained possession of recently stolen property is sufficient basis for the inference of guilty knowledge. Under all the authorities, it is a "strong circumstance to be considered with all the evidence in the case on the question of guilty knowledge." See note to *Wertheimer v. State,* 201 Ind. 572, 169 N. E. 40, 68 A. L. R. 178. In *State v. Rubenstein,* 69 Wash. 38, 124 Pac. 135, this court said:

"It was made to appear conclusively that the appellant received and disposed of stolen property; and there was evidence, although not perhaps so conclusive, that he knew at the time he received the property that the same had been stolen, and that he disposed of it with the intent to deprive and defraud the owner thereof. It is the province of the jury in criminal cases to pass on the weight and sufficiency of the evidence; and when the court finds there is substantial evidence of a fact, it must be left for the jury to say whether its probative force meets the standard required for a conviction, whether it convinces them beyond a reasonable doubt of the defendant's guilt."

The fact that appellant telephoned the sheriff about purchasing a motor which he suspected of being stolen and the fact that he made a report of the purchase to the chief of police were simply circumstances to be con-

sidered by the jury in determining whether the element of guilty knowledge was proven. It was not for the court to say, as a matter of law, that it was not proven.

■ Second: This brings us to the instruction of which appellant complains. In substance, the court told the jury that the making of the report to the chief of police, as required by Rem. Rev. Stat., § 2483 [P. C. § 9026], would not excuse the offense, if appellant in fact knew, when he bought the property, that it had been stolen. The instruction advised the jury, however, that they should consider the report and give it such weight as they deemed it entitled to in determining whether that element of the offense was established. This was a correct statement of the probative value of the report. The statute in question is one of eight sections (Rem. Rev. Stat., §§ 2481 to 2488 [P. C. §§ 9024 to 9031], inclusive), regulating pawnbrokers and second-hand dealers. They are police regulations, the violation of which carries a penalty independent of any other statute. In no sense can they be read or construed so as to exculpate a second-hand dealer of the charge of receiving stolen property, if in fact he knew it to have been stolen, simply because he reports the purchase to the chief of police.

■ What we have just said disposes of the errors assigned because of the refusal of the two requested instructions. One of these requested instructions explicitly stated that appellant, being a second-hand dealer,

". . . had a right to buy or receive said property, even though he had cause to believe that the same had been previously stolen."

The other requested instruction, by implication at least, was of similar import. It contained the following:

"You are further instructed that the only duty imposed by the law upon a secondhand dealer is to make a record of his transactions at the time they take place, such record to be open at all reasonable times for the inspection of the officers of the law. In the event the secondhand dealer has good cause to believe that any property in his possession has been previously stolen he shall report such fact to the officers of the law, giving the name of the person from whom he received the property and the date of such reception."

While this was followed by a correct statement of the law with respect to guilty knowledge, the instruction, read as a whole, was incorrect. The court properly refused to give the requested instructions.

Judgment affirmed.

BEALS, MAIN, and HOLCOMB, JJ., concur.

MILLARD, C. J. (dissenting)—I dissent. Appellant reported by telephone to the sheriff's office his purchase of the motor. Nothing was concealed. The sheriff investigated and he was assisted by appellant in his inspection of the motor. I am of the view that the judgment should be reversed and the cause dismissed.