*565 OPINION OF THE COURT
Joseph Harris, J.
Defendant corporation appeals from a judgment of the Green Island Justice Court (Hon. George F. Ryan), entered upon a jury verdict of conviction for dismantling a motor vehicle without a certificate (Vehicle and Trafile Law, § 415-a, subd 1) and criminal possession of stolen property in the third degree (Penal Law, § 165.40). Defendant was sentenced to a $1,000 fine on the criminal possession conviction and was given a conditional discharge on the dismantling charge.
On October 5, 1976 one Austin McGrath reported his 1964 blue and white Oldsmobile station wagon stolen to Officer Thomas McGivern of the Green Island Police Department. At trial the People produced four witnesses, all local residents who were familiar with McGrath’s car, who testified that they saw such car being towed en route to defendant’s place of business and then enter such place of business.
Officer McGivern testified that on October 6 he went to defendant’s business where Salvatore Scattareggia, defendant’s yard foreman, admitted that the car had come in the previous day and had recently been crushed. The officer further testified that the two men proceeded to defendant’s backyard where they saw several refrigerator-sized cubicles, one of which was blue and white with the legend "Oldsmobile” appearing thereon; according to Officer McGivern, Scattareggia stated that such cubicle looked like the remains of the car. In contrast to this, Scattareggia personally testified and denied that he saw the car on October 5 and that, the following day, he saw a cubicle which only resembled Mc-Grath’s car.
In addition to testimony regarding the identity of the Mc-Grath vehicle, evidence was also educed concerning the nature of defendant’s business. Salvador Garcia, defendant’s weigh-master, testified that when a car comes in, it is weighed, and the person who brought in the car is paid the appropriate amount; Garcia admitted, however,, that he makes no attempt to inquire, much less determine, if such person is the owner of the vehicle. John J. Carroll, defendant’s purchasing agent, explained that after the vehicle is weighed it is crushed into refrigerator-sized cubicles which are then sold to steel mills and foundries as scrap.
On the basis of such trial evidence defendant appeals *566 both convictions on the ground that neither was proved beyond a reasonable doubt.
Subdivision 1 of section 415-a of the Vehicle and Traffic Law reads as follows: "Definition and registration of vehicle dismantlers. A vehicle dismantler is a person who is engaged in the business of buying motor vehicles or trailers for the purpose of dismantling the same for parts or reselling such vehicles as scrap. No person shall be engaged or operate as a vehicle dismantler unless there shall have been issued to him a certificate of registration in accordance with the provisions of this section. The provisions of this subdivision shall not apply to a scrap processor. A violation of this subdivision shall be a class A Misdemeanor.”
Scrap processor is defined in subdivision 9 of section 415-a of the Vehicle and Traffic Law as: "any person who purchases material which may have been a vehicle or vehicle part for processing into a form other than a vehicle or vehicle part, but who does not sell any such material as a motor vehicle, a trailer or a major component thereof and who has certified to the commissioner that he is a scrap processor.” In order to convict defendant on this charge the People were required to establish beyond a reasonable doubt that: (1) defendant was a dismantler, rather than a scrap processor, and (2) if a dismantler, defendant was operating without the required registration.
The threshold inquiry is to determine whether defendant is a dismantler or a scrap processor in light of the statutory definitions set forth above, amplified by the legislative history of this relatively new (1973) law. According to the base definition, a person is a dismantler if he does either of two things: (1) dismantles motor vehicles for parts, or (2) resells motor vehicles as scrap. By the testimony of its own employees it was clearly established that defendant was "reselling motor vehicles for scrap” and was thus a dismantler within the statutory purview.
Legislative history supports this conclusion. Section 415-a was part of a legislative package designed to limit the activity of stolen car rings of disposing the remains of stolen vehicles to junk yards, or of transferring the vehicle identification plates from junked vehicles to stolen vehicles. According to the memorandum of the State Department of Motor Vehicles accompanying the passage of the law, its "primary requirement is to provide a system of record keeping so that vehicles *567 can be traced through junk yards and to assure that such junk yards are run by legitimate business men rather than by auto theft rings.” (McKinneys Session Laws of NY, 1973, p 2167.) The statute is designed to require registration of, and record keeping by, all concerns which obtain whole motor vehicles for purposes of selling same for scrap (or selling the parts for reuse). Neither registration nor detailed record keeping are required for businesses which purchase, not whole motor vehicles, but only vehicle hulks or other scrap material. A scrap processor does not buy motor vehicles (as does defendant), but buys scrap material; the scrap processor is not a scrap producer (as is defendant), but is scrap purchaser. Thus, as a purchaser of motor vehicles for the production and sale of same as scrap, the defendant is a dismantler and accordingly within the statute requiring registration.
However, establishing defendant as a dismantler does not alone prove the crime, for it must also be proven beyond a reasonable doubt that defendant engaged in dismantling without a registration. Although a lack of registration is somewhat implied by defendant’s denial that it is a dismantler, the standard of proof beyond a reasonable doubt requires more than this, such as an outright admission by defendant’s authorized agent that it did not have a registration, or production by the People of a "Negative Certificate”, indicating defendant’s lack of registration. Proof of either was conspicuously absent at trial, and this element thus not having been proved beyond a reasonable doubt, defendant’s conviction under section 415-a of the Vehicle and Traffic Law is reversed and the information charging such crime dismissed. This is a just result because it is obvious the defendant tried in good faith to ascertain its proper status as between vehicle dismantler and scrap processor and met with standard bureaucratic misinformation which resulted in defendant’s exercise of the wrong option.
Defendant similarly appeals its conviction for criminal possession of stolen property in the third degree on the ground that proof of guilt was also not established beyond a reasonable doubt. In this case, such crime is made out upon a showing of: (1) defendant’s possession of McGrath’s car; (2) a showing that such possession was with knowledge that it was stolen; and (3) a further showing that such knowing possession by defendant was with the intent to benefit itself or to impede recovery by the owner.
*568 Concerning defendant’s possession of McGrath’s car, such was established by the testimony of four local residents who were familiar with the car (one of whom was a filling station owner who had tended to the car) who testified they saw it towed over a route toward defendant’s place of business, the last of such witnesses testifying he saw it towed into defendant’s premises. This direct proof was accompanied by Officer McGivern’s testimony that he saw a blue and white cubicle with the word "Oldsmobile” thereon in defendant’s yard as well as admissions made by an employee of defendant to Officer McGivern that such cubicle was at one time McGrath’s car. Based upon such evidence a jury could be satisfied, beyond a reasonable doubt, that defendant did in fact possess McGrath’s car.
Proof of defendant’s possession of the car with the requisite knowledge that it was stolen was founded upon the testimony of defendant’s own witness and employee, Salvador Garcia, who stated that he failed to inquire of the person who brought in cars as to the ownership of such cars. This testimony fueled the operation of the presumption that a person in the business of "dealing in property who possesses stolen property is presumed to know that such property was stolen if he obtained it without having ascertained by reasonable inquiry that the person from whom he obtained it had a legal right to possess it.” (Penal Law, § 165.55, subd 2.) Such presumption was correctly charged (see People v Von Werne, 41 NY2d 584; People v Gilmore, 36 NY2d 898), and, moreover, is a proper presumption for it places but a reasonable duty of inquiry upon businesses in order to protect the society that allows such businesses to operate, and is the kind of inquiry one would expect of a legitimate businessman who desires to conduct only a legitimate business. Just as earlier stated by the court, the defendant exercised good faith with respect to attempting to ascertain whether its true status was that of vehicle dismantler or scrap processor; with respect to the second count the defendant did not act with rightly expected good faith, and the jury verdict produced a just result. The law need not tolerate activity that seeks to shield itself from knowledge and seeks thereby to thwart the criminal law.
Finally, proof of defendant’s intent to possess the car in order to benefit itself was proven through the operation of another presumption (Penal Law, § 165.55, subd 1) which, in *569 turn, was triggered by proof of defendant’s knowledge that the car was stolen.
Since upon the state of the above evidence the jury could legally find that all the elements of the crime of criminal possession of stolen property were proved beyond a reasonable doubt, such conviction is affirmed.