462 So.2d 999 (1984)
Vic ASHURST, Sr.
v.
STATE.
3 Div. 905.
Court of Criminal Appeals of Alabama.
October 9, 1984.
Rehearing Denied November 13, 1984.
Certiorari Denied January 25, 1985.
*1002 Stephen R. Glassroth and Rick Harris of Moore, Kendrick, Glassroth, Harris, Bush & White, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and Jane LeCroy Brannan, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 84-229.
BOWEN, Presiding Judge.
Operating a business called the Gold Mine, which dealt in the purchase of gold and silver, Vic Ashurst, Sr. was indicted and convicted for receiving stolen property in the first degree in violation of Alabama Code 1975, § 13A-8-17. The sentence of two years' imprisonment was suspended and Ashurst was sentenced to five months in the county jail.

I
Ashurst claims that the evidence was insufficient to convict him of receiving stolen property. Specifically, he disputes the sufficiency of the evidence to show that he knew or should have known that the merchandise was stolen. The record in this case is extensive and reveals a trial which this Court can only characterize as a battle wherein defense counsel, with relentless energy, contested and opposed the State's every effort to convict his client. Despite those efforts, the circumstantial evidence against Ashurst was sufficient to support the conviction.
Hannelore Bice was employed at Klein & Son Jewelers as an inventory control clerk. Ashurst operated the Gold Mine, a business which specialized in the purchase of gold and silver. Ashurst's wife and their seventeen-year-old son also worked there.
Between July of 1980 and February of 1981, Ms. Bice stole over $100,000 worth of merchandise from Klein's and sold it to the Gold Mine, receiving between $3,000 and $4,000. During this time, she made twenty-two trips to the Gold Mine, usually during her lunchtime. Most of the property the forty-two-year-old Bice sold to the Gold Mine was stolen, although "some jewelry and some silver" belonged to her. Usually, the property was new.
Ms. Bice testified that she sold silver flatware about ten or twelve times. On approximately six of those occasions the flatware was still in the original packaging. The flatware consisted of different patterns by different manufacturers.
She took jewelry to the Gold Mine about ten times. All the jewelry was new. Ms. Bice sold four diamonds to the Gold Mine, which she had stolen from Klein's. She testified that "most of the time when I sold a loose diamond that Mr. Ashurst was there, except one time", and that Ashurst "looked at them diamonds", although his son actually weighed and measured them.
During her twenty-two visits to the Gold Mine, Ashurst was present "about thirteen, fourteen times." Ms. Bice testified that, if Ashurst was present, "(h)e would either talk or counsel (his son) about the price of it" and that when he was present he "usually" made the final decision about the purchase price.
Ms. Bice testified that she never told anyone at the Gold Mine that the property was stolen. Each and every time a transaction *1003 was conducted, someone in the store asked her name, address and license number.
The particular offense for which Ashurst was indicted occurred on the 5th of February, 1981, when Ms. Bice sold some jewelry to the Gold Mine, which she had stolen from Klein's. Although the retail value of these items was over $5,000, Bice received $625. Ms. Bice stated that the "young Mr. Ashurst weighed it and actually paid me the money, but Mr. Ashurst was there." Ashurst "saw his son make the actual sale." He stepped into the office where Ms. Bice was sitting, but she did not recall the conversation they had.
Bill Heilpern, the president of Klein's at the time in question, testified, without objection, that Ms. Bice's actions would have made him "pretty suspicious" and that "when somebody comes in that many times with that much, I feel, and that's a personal opinion, I feel like there is no way on earth you wouldn't think that it was stolen." In Heilpern's opinion, Ms. Bice usually looked "sloppy". He testified that, if someone like her came into Klein's with just three different manufacturers of silverware, that would make him "quite suspicious". If she came in with just two, it would make him "pretty suspicious, too." Heilpern testified that 99% of the merchandise Ms. Bice stole from Klein's was "brand new".
Debby Matthews worked for Ashurst "somewhere around 1980" at Southern American Gold and Silver before Ashurst opened the Gold Mine. She testified that Ashurst told her to buy stolen property: "At one time he said to buy it. If we looked at something that looked to be kind of, you know, unusual or stolen, buy it real cheap because he would not get the money back from the Police Department."
It is undisputed that Ashurst complied with a municipal ordinance requiring second-hand gold and silver dealers to report their daily transactions to the Montgomery Police Department. Montgomery, Alabama, Ordinance No. 18-80 (1980). The report required "a brief description of the articles or property purchased, the date and hour of the purchase and a brief description of the person from whom the purchase is made, together with the address, Drivers License number, sex, race, and date of birth of such person." The record does show that Ashurst failed to list the quantity of much of the flatware he purchased from Ms. Bice and that the descriptions on the police report for the merchandise purchased from Ms. Bice were considerably less detailed than the description listed on the bills of sale.
Ashurst maintained that Ms. Bice told him that she had purchased the merchandise from Bellas Hess when the store closed. (See Issue II). He denied any knowledge that the property was stolen and contended that he was not even present on February 5th.
In reviewing the sufficiency of the evidence to support a conviction based on circumstantial evidence, the test to be applied is whether a jury might reasonably conclude that the evidence excludes every reasonable hypothesis except that of guilt. Dolvin v. State, 391 So.2d 133, 137 (Ala. 1980); Cumbo v. State, 368 So.2d 871 (Ala. Cr.App.1978), cert. denied, Ex parte Cumbo, 368 So.2d 877 (Ala.1979).
"In reviewing the sufficiency of the evidence in criminal cases, we are to view the evidence and all inferences that may reasonably be drawn from it in a light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Whether evidence is direct or circumstantial, we must accept all credibility choices that tend to support the jury's verdict. United States v. Allison, 616 F.2d 779 (5th Cir.), cert. denied, 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980). The standard of review is whether a reasonably minded jury must necessarily have entertained a reasonable doubt of the defendant's guilt. If the jury could not reasonably have concluded that the evidence excluded every reasonable hypothesis but that of guilt, then we must reverse the convictions. United States v. Rodriguez, *1004 654 F.2d 315 (5th Cir.1981); United States v. Kelley, 630 F.2d 302 (5th Cir. 1980)." United States v. Hinds, 662 F.2d 362, 366 (5th Cir.1981), cert. denied, 455 U.S. 1022, 102 S.Ct. 1720, 72 L.Ed.2d 140 (1982).
Under an indictment for receiving stolen property, the prosecution must prove that the accused actually knew that the property was stolen or that he had reasonable grounds to believe that it was stolen. "[I]f `reasonable grounds for believing' exist, that element is established, although defendant may have had no `knowledge', ... [I]f the jury believes beyond a reasonable doubt the existence of facts which were known to defendant and which are sufficient in the opinion of the jury to show the existence of `reasonable grounds for believing' that the goods were stolen, and they were in fact stolen, no further inquiry in that respect need be pursued." Farzley v. State, 231 Ala. 60, 61, 163 So. 394 (1935); W. LaFave and A. Scott, Criminal Law 687 (1972).
"In most cases there is no direct testimony of the receiver's actual belief. Proof thereof must therefore be inferred from the circumstances surrounding his receipt of the stolen property." LaFave at 686. Guilty knowledge may be inferred from all the facts and circumstances surrounding the entire transaction concerning the accused's acquisition of the stolen property. Tombrello v. State, 431 So.2d 1355, 1357 (Ala.Cr.App.1983); Tyree v. State, 407 So.2d 580, 581 (Ala.Cr.App.1981). "`[G]uilty knowledge may be inferred from the fact that the receiver purchased the goods for very much less than their value.' Fulton v. State, 8 Ala.App. 257, 263, 62 So. 959 (1913)." Tyree, 407 So.2d at 581. "[A] very inadequate purchase price is a factor which points towards appellant's guilt." Fillmore v. State, 647 S.W.2d 300, 303-04 (Tex.App.1982). The fact that an accused maintained no records and failed to obtain the information required by statutes when purchasing merchandise are also circumstances which indicate guilt. Fillmore, supra. Applying these principles to the facts of this case, we find the evidence sufficient to support the verdict.
The offense of receiving stolen property is defined by Alabama Code 1975, § 13A-8-16:
"(a) A person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner.
"(b) If a person:
(1) On two separate occasions within a year prior to the commission of the instant offense of receiving stolen property is found in possession or control of stolen property; or
(2) Possesses goods or property which have been recently stolen; or
(3) Regularly buys, sells, uses or handles in the course of business property of the sort received, and acquired the property without making reasonable inquiry whether the person selling or delivering the property to him had a legal right to do so, this shall be prima facie evidence that he has the requisite knowledge or belief.
"(c) The fact that the person who stole the property has not been convicted, apprehended or identified is not a defense to a charge of receiving stolen property."
In most cases involving a dealer, that is one who "regularly buys, sells, uses or handles in the course of business property of the sort received", § 13A-8-16(b)(3), the prosecution is aided by one or more of the statutory presumptions defined in § 13A-8-16(b)(1), possession on two separate occasions within one year's time; (b)(2) possession of recently stolen property; and (b)(3) possession by a dealer without reasonable inquiry. See Watts v. State, 435 So.2d 129, 133-34 (Ala.Cr.App.1982), reversed on other grounds, Ex parte Watts, 435 So.2d 135 (Ala.1983); Eldridge v. State, 415 So.2d 1190, 1192-95 (Ala.Cr.App.1982); Goodman v. State, 401 So.2d 208, 210-11 (Ala. Cr.App.), cert. denied, Ex parte Goodman, *1005 401 So.2d 213 (Ala.1981); People v. Roder, 33 Cal.3d 491, 658 P.2d 1302, 189 Cal.Rptr. 501 (1983); People v. R. Kelly Freedman & Son, Inc., 95 Misc.2d 564, 407 N.Y.S.2d 963, 966 (1978); R. Perkins & R. Boyce, Criminal Law 403 (3rd ed. 1982); C. Torcia, 4 Wharton's Criminal Law § 456 (14th ed. 1981). However, here, the trial judge granted defense counsel's motion for an acquittal or directed verdict as to § 13A-8-16(b) and did not charge the jury on these statutory presumptions.
In this case there are several circumstances which afford the reasonable inference that Ashurst had "reasonable grounds to believe" that the jewelry purchased on the 5th of February 1981 was stolen. The most significant of those circumstances are: (1) In an eight-month period, the Gold Mine purchased merchandise from Ms. Bice on twenty-two different occasions. (2) During that time, the Gold Mine purchased property with a retail value of over $100,000 for between $3,000 and $4,000. On February 5th, it purchased jewelry valued at over $5,000 for $625. (3) The president of Klein's testified that Bice's conduct would have made him "pretty suspicious", and, considering the frequency, quality, and amount of her business, there was "no way on earth you wouldn't think that it was stolen." (4) Most of the merchandise Bice sold to the Gold Mine was stolen from Klein's and 99% of that was "brand new". (5) Ashurst was present on more than half the occasions Ms. Bice came in, talked to or counseled his son and usually made the final decision about the purchase price. (6) Ashurst's wife and seventeen-year-old son also worked at the Gold Mine. (7) Ashurst was an experienced dealer in gold and silver and had been warned by the Montgomery police about the purchase of property that he suspected to be stolen. (8) Ashurst reportedly told his employees at the store he owned before opening the Gold Mine to purchase stolen merchandise.
Although entirely circumstantial, there was sufficient evidence to support Ashurst's conviction for receiving stolen property in the first degree.
"Guilty knowledge may be shown by circumstantial evidence, as well as by direct evidence. See United States v. Kilcullen, 546 F.2d 435, 441 (1st Cir.1976). Circumstantial evidence tending to show guilty knowledge need not compel a finding of such knowledge in order to sustain a conviction; all that is necessary is that reasonable jurors could be convinced beyond a reasonable doubt that the defendants had guilty knowledge. Id. at 441 (citing cases). The jury is `free to choose among various reasonable constructions of the evidence.' United States v. Gabriner, 571 F.2d 48, 50 (1st Cir.1978) citing United States v. Klein, 522 F.2d 296, 302 (1st Cir.1975)." United States v. Flaherty, 668 F.2d 566, 579 (1st Cir. 1981).
The reasonableness of Ashurst's explanation concerning his possession of the stolen merchandise was for the jury's determination. United States v. Spivey, 508 F.2d 1061, 1063 (5th Cir.1975); Goodman, 401 So.2d at 211. "The reasonableness of the explanation given by one in possession of recently stolen property is to be determined from all of the circumstances, and, if reasonable people can come to a different conclusion on the subject, the question of whether the explanation is reasonable is one to be determined by the jury." Ford v. State, 383 So.2d 601, 603 (Ala.Cr.App.1980). If the circumstances suggest the possibility that the property was stolen, the accused may not willfully "shut his eyes" for fear of what he would learn. Perkins, supra, at 401. An accused may not be "willfully blind". Haynes v. State, 335 So.2d 203, 205 (Ala.Cr.App.), cert. denied, 335 So.2d 208 (Ala.1976).
The fact that the circumstances indicating Ashurst's guilty knowledge are relatively weak or insignificant when considered individually is of no import. "For even if the jury had found that each piece of evidence, standing alone, was consistent with innocence, the jury nevertheless could reasonably have concluded that the evidence, *1006 taken as a whole, excluded every reasonable hypothesis but that of guilt." Hinds, 662 F.2d at 367.
"`(T)he jury was entitled to ponder the interrelationship of all these evidentiary items.' [United States v.] Staten, 581 F.2d [878] at 886 n. 71 [D.C.1978]; United States v. Smith, 171 U.S.App.D.C. 342, 520 F.2d 74, 76 (1975). `Circumstantial evidence sufficient to support a jury's finding of guilt may be found in the accumulation of several relatively insignificant pieces of evidence, or it may be presented in the form of a single highly significant or incriminating event.' United States v. Morando-Alvarez, 520 F.2d 882, 884-85 (9th Cir.1975). In considering the weight to be given evidence, `courts and juries must use common sense, common reason, and common observation as well as a common knowledge of the usual acts of men and women under given circumstances.' Thompson v. State, 21 Ala.App. 498, 499, 109 So. 557 (1926)." German v. State, 429 So.2d 1138, 1143 (Ala.Cr.App.1982).
With regard to the sufficiency of the evidence, Ashurst argues that he had no reasonable grounds to believe that the property was stolen because he complied with the municipal ordinance requiring the reporting of certain business transactions. He contends that "a legitimate businessman may presume that his obedience to a strict ordinance, regulating the sale of potential stolen property, constitutes reasonable action to prevent being a recipient of stolen property." (Appellant's Brief, p. 9).
We wholly reject this contention. Such a presumption fosters and encourages "willful blindness". The ordinance is designed to discourage the sale of stolen property and is aimed at what defense counsel characterized in his closing argument to the jury as the "rather treacherous business" of buying gold and silver. No reasonable construction of the ordinance affords the interpretation that faithful compliance with the reporting requirements protects a dealer from any criminal liability arising out of the purchase or receipt of stolen property. As one commentator has observed:
"The ordinary thief steals in order to sell the stolen property, not to use it. Yet he cannot, by himself, successfully deal with the ultimate consumer. He must operate through a middleman, the professional receiver of stolen property. Without such receivers, theft ceases to be profitable. It is obvious that the receiver must be a principal target of any society anxious to stamp out theft in its various forms." LaFave at 682.
A municipal ordinance requiring gold and silver dealers to report their transactions daily to the police does not absolve the dealer from making "reasonable inquiry whether the person selling or delivering the property to him had a legal right to do so", § 13-8-16(b)(3), nor does it serve as a shield behind which the unscrupulous dealer may hide. Such regulations "[i]n no sense can ... be read or construed so as to exculpate a secondhand dealer of the charge of receiving stolen property, if in fact he knew it to have been stolen, simply because he reports the purchase to the chief of police." State v. Salzman, 186 Wash. 44, 48, 56 P.2d 1005, 1008 (1936). The fact that Ashurst did comply with the ordinance was a factor the jury should have given such weight as they deemed it entitled to in determining whether the offense was committed. Salzman, 56 P.2d at 1007.
Our review of the evidence convinces us that the jury's verdict is supported by the evidence. "[T]he standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude." Williamson v. United States, 365 F.2d 12, 14 (5th Cir.1966), quoted with approval in Cumbo, 368 So.2d at 875. The fact that after a five-day trial the jury returned a verdict in only fifty-five minutes is some indication of the strength of the State's case.

*1007 II
Ashurst contends that he should not have been convicted of receiving stolen property in the first degree as a matter of law because a dealer can only be convicted of receiving stolen property in the second degree.
The crime of receiving stolen property is defined in Alabama Code 1975, § 13A-8-16. The offense is graded into three degrees which, in most cases, are determined by the value of the property stolen. Speight v. State, 437 So.2d 662, 663 (Ala.Cr.App.1983). Receiving stolen property in the first degree involves property which exceeds $1,000 in value (§ 13A-8-17); second degree involves property which exceeds $100 but does not exceed $1,000 in value (§ 13A-8-18); third degree involves property which does not exceed $100 in value (§ 13A-8-19). The one exception to the rule that the value of the stolen property determines the degree of the offense is in the case of pawn brokers or dealers. Speight, supra.
Section 13A-8-18(a)(2) states that "(r)eceiving stolen property: * * * Of any value under the circumstances described in subsection (b)(3) of Section 13A-8-16; constitutes receiving stolen property in the second degree." (Emphasis added.) Section 13A-8-16(b)(3) states, "(I)f a person: * * * Regularly buys, sells, uses or handles in the course of business property of the sort received, and acquired the property without making reasonable inquiry whether the person selling or delivering the property to him had a legal right to do so, this shall be prima facie evidence that he has the requisite knowledge or belief."
We view § 13A-8-18 as stating the minimum degree for which a dealer can be convicted. If the property exceeds $1,000 in value, he may be convicted for receiving stolen property in the first degree. This particular provision is aimed at the professional dealer in stolen property, the "fence", because "`(T)he professional fence is always a felon because he is vital to making theft lucrative.'" Commentary following § 13A-8-19.
Section 13A-8-18(a)(2) and § 13A-8-16(b)(3), creating a greater liability for the dealer who purchases stolen goods, are directed to the professional "fence".
"Any larceny is a violation of the social interest in the protection of property rights, it is true, but the `fence' stirs up countless larcenies which would otherwise not be committed, and tends to put this type of crime on an organized `business' basis. The `fence' is the popular name for the receiver of stolen property. Historically, receiving stolen property is a much lesser offense than larceny, but as a present social problem it should be ranked as a crime of graver degree.... Receiving stolen property is one of the crimes most difficult to prove to the satisfaction of the jury; but the extent of the social menace involved should not be underestimated." Perkins at 394.
Under our statutory scheme, Ashurst could not have been found guilty of theft in the third degree, a misdemeanor, as a lesser included offense of theft in the first or second degree because he was a dealer. Regardless of the value of the property, Ashurst, if guilty, was guilty of receiving stolen property in the second degree. If the value exceeded $1,000 he was guilty of receiving stolen property in the first degree.

III
Ashurst alleges that the admission of his testimony at his first trial was error because that testimony was "tainted" and "constitutionally defective".
This case involves the appeal from Ashurst's second conviction. His first conviction was reversed because the trial judge prohibited defense counsel from talking to his client once Ashurst had commenced testifying until he had completed his testimony including all breaks and recesses. This Court held that this prohibition was an unconstitutional deprivation of Ashurst's right to counsel. Ashurst v. State, 424 So.2d 691 (Ala.Cr.App.1982). An absolute rule that deprives a defendant of *1008 the right to consult with counsel while the defendant is in the process of testifying is overly broad and overly restrictive and in violation of the accused's constitutional right to the effective assistance of counsel. Payne v. State, 421 So.2d 1303 (Ala.Cr. App.), cert. quashed, 421 So.2d 1306 (Ala. 1982).
The general rule is that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); Koch v. State, 401 So.2d 796, 801 (Ala.Cr. App.), cert. denied, Ex parte Koch, 401 So.2d 801 (Ala.1981); Cantrell v. State, 353 So.2d 80, 82 (Ala.Cr.App.1977); Willingham v. State, 50 Ala.App. 363, 367, 279 So.2d 534, cert. denied, 291 Ala. 803, 279 So.2d 538 (1973). However, this rule does not apply where the former testimony was given at a hearing where the accused was denied his right to the assistance of counsel, People v. Martin, 21 Mich.App. 667, 176 N.W.2d 470 (1970), or where the former testimony was "impelled" in order to rebut evidence introduced against the accused in violation of his constitutional rights. Harrison, supra.
In this case, the objection now raised was not made at trial. "The point appears here in its virgin state, wearing all its maiden blushes, and is therefore out of place." Cleveland v. Chambliss, 64 Ga. 352, 359 (1879). Although defense counsel objected to the admission of Ashurst's former testimony, those objections do not reach the ground advanced on appeal. This Court "will not consider on appeal any constitutional questions not raised below." Steele v. State, 289 Ala. 186, 189, 266 So.2d 746 (1972); Proctor v. State, 424 So.2d 705 (Ala.Cr.App.1982). "[O]bjections to evidence cannot be raised for the first time on appeal.... Even constitutional rights can be waived on appeal if they are not seasonably raised in the trial court." Owen v. State, 418 So.2d 214, 219-20 (Ala.Cr.App. 1982).
The record reveals that defense counsel had read the transcript of Ashurst's first trial and was aware of the reason why the first conviction had been reversed. There can be no contention that the objection now argued was not available at trial. Yet, nowhere in the record before this Court does that objection appear. Even with a proper objection Ashurst would have been entitled only to have that portion of his prior testimony suppressed which occurred after the violation of his right to counsel.
We do not think that a defendant should be permitted to benefit from his failure to raise at his second trial essentially the very same error which resulted in the reversal of his first trial on appeal without some reasonable excuse or justification. In this case, counsel's failure to object could well have been a tactical decision in order to place Ashurst's testimony before the jury without subjecting the defendant to additional cross examination by the State. Without proper objection, there is nothing for this Court to review.

IV
Throughout the course of the proceedings in the circuit court, defense counsel unsuccessfully but repeatedly attempted to establish that Ashurst had been set up, and that the sale of jewelry on the 5th of February, 1981, had been a "controlled buy" conducted by the Montgomery Police Department. Despite these numerous attempts and contrary to the defendant's insistence, there was no evidence that the police, or anyone else, entrapped Ashurst through a "controlled buy". Despite this absence, defense counsel, in his closing argument to the jury, argued that the jewelry was "planted" and that the "trap was baited."
Although the trial judge did occasionally prevent defense counsel from pursuing this issue and did at times require counsel to "move on" in his examination of witnesses, this subject was thoroughly explored at trial. "The latitude and extent of cross-examination, of necessity, is a matter within the sound discretion of the trial court, and, in the absence of prejudicial abuse, it is not *1009 reviewable on appeal." Turner v. State, 289 Ala. 97, 100, 265 So.2d 883 (1972). Although the accused has a constitutional right of confrontation, U.S. Const.Amend. VI, that right is not unlimited. United States v. Summers, 598 F.2d 450, 460 (5th Cir.1979). Once the accused has been afforded the constitutionally required threshold level of inquiry, the trial judge has broad discretion in limiting further inquiries. United States v. Tracey, 675 F.2d 433, 437, 439 (1st Cir.1982); United States v. Bulman, 667 F.2d 1374, 1381 (11th Cir.), cert. denied, 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). A judge may limit cross examination if the questions are repetitive, United States v. Wood, 695 F.2d 459, 465 (10th Cir.1982); Ross v. Estelle, 694 F.2d 1008, 1010 (5th Cir.1983); United States v. Sonntag, 684 F.2d 781, 788 (11th Cir.1982), irrelevant, United States v. Barnes, 681 F.2d 717, 726 (11th Cir.1982), cert. denied, 460 U.S. 1046, 103 S.Ct. 1447, 75 L.Ed.2d 802 (1983), or lacking in a sufficient basis, United States v. West, 670 F.2d 675, 683 (7th Cir.), cert. denied, 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982); United States v. Tolliver, 665 F.2d 1005, 1008 (11th Cir.), cert. denied, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982).
Even if the trial judge's rulings constitute error, the error is harmless in view of the exhaustive treatment of this issue both in the pretrial hearings and at trial.
We recognize that if the police had arranged to have Ms. Bice given the jewelry so that she could sell it to Ashurst, there would have been no theft and the property would not have been stolen. Farzley, 231 Ala. at 61, 163 So. 394. Here, there was simply no evidence to suggest or support this contention.

V
We do not consider the remark of the assistant district attorney in closing argument to constitute a comment on Ashurst's failure to testify. The remark must be reviewed within the context of the trial. The State presented evidence that Ms. Bice sold some diamonds to the Gold Mine which she had stolen from Klein's. Bice testified that the diamonds "belonged to Klein and Son and they would not sell anything but diamonds." The president of Klein's, Mr. Heilpern, testified that the procedure for identifying and determining the value of a diamond involved the use of microscopes, other equipment and instruments.
The defense made an issue of how the purchase price of gold and jewelry was determined at the Gold Mine. In Ashurst's former testimony introduced during the State's case-in-chief, Ashurst stated that he had no experience in determining the value of a diamond and that the matter of purchasing a diamond was left to his seventeen-year-old son.
Ed Caldwell, an employee at the Gold Mine, verified this in his testimony for the defense. Ashurst's son testified that he used a magnifying glass and a "gem instrument" in identifying and pricing diamonds. He stated that he would use his "best judgment" and purchase a diamond even though he had no "precise measurements".
In his cross examination of defense witnesses, the prosecutor attempted to establish that the reason why Ashurst was willing to purchase the diamonds from Ms. Bice was because he knew that Bice had stolen the gems from Klein's, which only handled quality merchandise.
The objectionable remark is found in the following portion of the closing argument of the assistant district attorney when the prosecutor, once again, stressed this point:
"Then we have Little Vic testifying, ladies and gentlemen. He has a little magnifying glass and is he paying four, five, five hundred and fifty, and eight hundred dollars by looking at it with a magnifying glass. He said he was just guessing, his judgment. He said his Daddy said he could buy anything that he wanted, trusting his judgment. Well, folks, you heard experts get up there and say they had to use all these different *1010 instruments to tell. Now, what does that tell you, ladies and gentlemen? Remember the last question I asked him. I said, `Vic, or Mr. Ashurst, you know why you bought those diamonds, don't you? I said', `The reason you bought them is because you knew Mrs. Bice worked at Klein's and you knew where those diamonds came from.' I think we know the answer to that. If they had had regular instruments and used those instruments in examining those diamonds, don't you think that they would have brought them in here and told you about them. Don't you think." (Emphasis added.)
There was no objection raising this issue in the circuit court and it is presented here for the first time. The prosecutor's comment does not raise the possibility that the jury could have understood it to be a reference to the defendant's failure to testify. An objection was required. See Ex parte Tucker, 454 So.2d 552 (Ala.1984). Without proper objection there is nothing for this Court to review. Broadway v. State, 257 Ala. 414, 60 So.2d 701 (Ala.1952).
Even with proper objection, the prosecutor's comment cannot be understood as a reference to Ashurst's failure to testify. Ex parte Dobard, 435 So.2d 1351, 1359 (Ala.1983), cert. denied, Dobard v. Alabama, ___ U.S. ___, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). "While the State may not call attention to a defendant's failure to testify it may expose the failure of the defendant to produce other exculpatory evidence." Griffin v. State, 393 So.2d 523, 528 (Ala.Cr.App.1981). The prosecutor's comment is a proper reference to the testimony given and not to the defendant's failure to testify. Annot, 14 A.L.R.3d 723, § 9 (1967). "Where the State's evidence does stand uncontradicted, the prosecutor does have the right to point this out to the jury." Beecher v. State, 294 Ala. 674, 682, 320 So.2d 727 (1975) (emphasis in original). A comment by the prosecutor which refers to the defendant's failure to put on evidence is not a comment on the defendant's failure to testify unless the defendant himself is the only one who can contradict or deny the evidence. Griffin, 393 So.2d at 528.
We find no plain error in the prosecutor's comment.

VI
Finally, Ashurst alleges that the trial judge committed "numerous procedural errors which require a new trial."

A.
Debby Matthews testified that Ashurst told her to buy "unusual or stolen" merchandise "real cheap because he would not get the money back from the police department." Her testimony was not inadmissible hearsay. "As stated by Wigmore, `any and every statement of an accused person, so far as not excluded by the doctrine of confessions * * * or by the privilege against self-incrimination * * * is usable against him as an admission * * *.' 6 Wigmore, Evidence, § 1732, p. 99 (3rd Ed.1940)." United States v. Rouse, 452 F.2d 311, 313 (5th Cir.1971).

B.
On the day set for trial, defense counsel requested a continuance to "further" investigate a Uniform Incident/Offense Report produced by the Montgomery Police Department. This request was properly denied as the trial judge found that "these documents are no different than what has already been testified to [in the pretrial hearings]." The record shows no abuse of the trial judge's discretion in denying the request.

C.
Bill Heilpern, the president of Klein's, was properly allowed to remain in the courtroom during the trial even though the rule had been invoked. "It is within the discretion of the trial judge to excuse some witnesses and not others from the operation of `the rule' of exclusion." Weatherford v. State, 369 So.2d 863, 865 (Ala.Cr.App.), cert. denied, Ex parte *1011 Weatherford, 369 So.2d 873 (Ala.), cert. denied, Weatherford v. Alabama, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979). "No abuse of discretion in this respect can be charged to the trial court in the absence of a showing of any injury to defendant by reason of any infraction of the rule." Pope v. State, 367 So.2d 998, 1002 (Ala.Cr.App. 1979).

D.
The motion to quash the jury venire was properly denied. Prior to this particular trial, the trial judge was the "Duty Judge" and was conducting "Juror Orientation" of the entire venire where he "simply oriented the Jury and qualified them generally." No particular case was mentioned. In a noncapital case, a defendant's presence is not required when the jury venire is organized and some prospective jurors are excused. Black v. State, 401 So.2d 320, 321 (Ala.Cr.App.1981); Durden v. State, 394 So.2d 967, 977 (Ala.Cr. App.1980), cert. quashed, Ex parte Durden, 394 So.2d 977 (Ala.1981).

E.
The record contains no evidence that the prosecutor systematically used his peremptory challenges against blacks over a period of time. Swain v. Alabama, 380 U.S. 202, 227, 85 S.Ct. 824, 839, 13 L.Ed.2d 759 (1965). The mere facts that the prosecutor struck some or even all of the blacks from the jury (the record not showing which) and "reserve[d] the right to use any criteria to strike a Jury, race being one of dozens of facts that we consider", did not overcome the presumption that the prosecutor utilized the State's strikes in a fair and impartial manner. Ex parte Dobard, 435 So.2d at 1355. See also United States v. Jenkins, 701 F.2d 850, 859-60 (10th Cir. 1983); United States v. Capers, 685 F.2d 249, 250 (8th Cir.1982).

F.
"The constitutional guaranty of a public trial does not apply to `conferences on questions of law which take place during the trial but out of the hearing of the jury.'" Williams v. State, 383 So.2d 547, 559 (Ala.Cr.App.1979), affirmed, Ex parte Williams, 383 So.2d 564 (Ala.), cert. denied, Williams v. Alabama, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980). Despite his objections to "bench trials", on at least two occasions defense counsel requested to make a motion "in Chambers". Additionally, the trial judge had a reason for requiring certain objections to be made "at the bench."
"THE COURT: The Court would agree that there has been a lot of approaching the Bench, but one of the reasons for the Court requiring this to be done is because both sets of lawyers continue to speak out in front of the Jury in what I consider to be an improper fashion. I have asked both sides to please quit making comments, start asking questions and don't make comments to witnesses and so forth. That's the reason that I am requiring it to be done at the Bench rather than out in front of the Jury."

G.
The trial judge properly excluded the testimony of a Mr. Haynes, who was "paying on" a ring at Klein's. Defense counsel wanted to show that Ms. Bice refused to accept Haynes' check and stated that he would have to have cash money. There was a confrontation, and Ms. Bice called Kalman Shwarts, the store manager, who approved the check. Defense counsel contended that Shwarts and Bice were "working together" and that Haynes' testimony would impeach both of them. The trial judge ruled that "the whole matter is irrelevant to this trial."
Haynes' testimony did not tend to show that Ashurst was entrapped nor did it tend to impeach either Shwarts or Bice on a material matter. Although given the opportunity, defense counsel was unable to establish the relevancy of Haynes' testimony. It is impermissible to impeach a witness on an immaterial matter. C. Gamble, *1012 McElroy's Alabama Evidence, § 156.01 et seq. (3rd ed. 1977).

H.
Ashurst contends that, because the evidence in his first trial was insufficient to sustain a conviction, his second trial violates his constitutional rights against double jeopardy. This issue was not raised in the circuit court and there is nothing before this Court other than bare allegations to support the contention that the evidence at Ashurst's first trial was insufficient.
Our review convinces this Court that the defendant received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
TYSON, HARRIS and PATTERSON, JJ., concur.
TAYLOR, J., dissents with opinion.
TAYLOR, Judge, dissenting.
I respectfully dissent. Section 13A-8-18, Code of Alabama 1975 states "(a) Receiving stolen property ... [o]f any value under the circumstances described in subdivision (b)(3) of section 13A-8-16 constitutes receiving stolen property in the second degree...." Section 13A-8-16(b)(3) refers to a person who "[r]egularly buys, sells, uses or handles in the course of business property of the sort received ...". The language is plain and clear. The appellant, fitting the description as set out in § 13A-8-16(b)(3), could have been convicted only of receiving stolen property in the second degree.